**C. A. WHITE, Appellant,**

v.

**CITIZENS INSURANCE COMPANY OF NEW JERSEY, a Corporation, Respondent.**

No. 23426.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1962.

Robert F. Middleton, Nevada, for appellant.

Lynn M. Ewing, Jr., Ewing, Ewing, Ewing, Carter & Wight, Nevada, for respondent.

BROADDUS, Judge.

This is an action upon a policy of marine insurance. Plaintiff recovered a verdict against the defendant insurance company in the amount of $2,050 and judgment was entered thereon. Defendant filed its motion for new trial which was sustained by the trial court "for error committed in giving Instruction One." Plaintiff appealed.

Plaintiff resides in Nevada, Missouri. In the spring of 1957 plaintiff purchased a 17 foot Chris Craft Sportsman boat, took it to the Lake of the Ozarks where he used it during the summer. At the end of that year plaintiff decided to transport the boat back and forth to save the storage fee, which he thought was too high. Plaintiff who owned a Ford Agency and garage, decided also that the boat should be refinished, and he made a trip to Kansas City to see the dealer from whom he had bought the boat. The dealer suggested fiberglassing the hull, sold the fiberglass to plaintiff and instructed him in the procedure to be used in applying it. Plaintiff with the help of Mr. Gilbert McDowell coated the hull of the boat with commercial fiberglass. Mr. McDowell had had eleven years experience with the use of fiberglass, having worked for the Boeing Airplane Factory, the Ford Motor Company and the K & L Boat Factory. He testified

that the fiberglass was properly applied and was of sufficient strength. Plaintiff testified that when the work was completed in June, 1958, the boat was in perfect condition.

Plaintiff had used the boat a few times and it then occurred to him that he should have it insured. He called defendant's agent in Nevada, Mr. Arthur, who came to plaintiff's place of business bringing an application. Mr. Arthur made out the application, collected the premium, countersigned and delivered the policy. The policy was dated July 2, 1958.

On July 6, 1958, plaintiff took the boat to the Lake of the Ozarks. At the Lake at that time were some friends of plaintiff, Mr. and Mrs. Andy Byram and their three young daughters. Mr. Byram is Vice-President of the Farm & Home Savings and Loan Association of Nevada. He had spent four and one-half years in the Navy and was familiar with small boats of various types.

Plaintiff took the boat for a trial run up the Lake and then came back to the dock and asked the Byrams if they wanted to take a ride. Mr. and Mrs. Byram and two of their daughters got into the boat with plaintiff. They rode around for 15 or 20 minutes and then headed into a cove, turned around, and started back and suddenly the boat struck something and "raised the boat right up out of the water." Soon thereafter the boat began taking water and plaintiff headed it for the nearest dock. The boat was tied up and soon began to pull the dock down. So the boat was cut loose and sank into about 60 feet of water. We will recite other portions of the evidence as we discuss the contentions advanced by the parties.

The sole issue here is whether Instruction One given on behalf of plaintiff was so prejudicially erroneous, as a matter of law, as to demand the granting of a new trial as to the defendant insurance company. Brooks v. St. Louis Pub. Serv. Co., 275 S.W.2d 252, 254 (Mo.Sup.).

Plaintiff's first contention is that the trial court erred in sustaining defendant's motion for new trial since it was not error, as contended by the motion, for the instruction to fail to negative the defenses of negligent operation of the boat and unseaworthiness.

■ Defendant is in no position to complain of the failure of the instruction to negative negligent operation of the boat by the master (plaintiff), since that theory of defense was never pleaded by defendant. It was an affirmative defense which must have been pleaded, unless it was shown by plaintiff in making out his case. Plaintiff's evidence shows that he was guilty of no negligence whatever. He testified that we were "cruising at about two-thirds speed" when the boat struck the concealed object, which he thought was possibly "a steel fishing trot line." Mr. Byram testified that "we were going, I would say at a normal rate of speed. We weren't going excessively fast; we weren't going real slow." There was no evidence that vigilant lookout would have disclosed the existence of an object or that slackening of speed would have affected the outcome. Therefore, with the giving of defendant's Instruction 8, which submitted the issue, defendant received more than it was entitled to.

The basis for defendant's claim that the boat was not seaworthy is based upon the testimony of its witness Brinckmann, who raised the boat after it had been submerged in the water for nine days and where it had become filled with slime. He testified that there were definite signs that the cracks between the planks hadn't been calked; that a boat should always be calked before it is fiberglassed; that the purpose of calking "is to seal the cracks between the planks so that moisture from inside the boat can't get down between the planks to the underside." In expressing his opinion as to what caused the boat to sink, he stated: "From all appearances, it would seem that the wood had swollen from the moisture, split the fiberglass, and the operation of the boat—the friction of the water finally got a section of the fiberglass loose and then ripped it off."

■ We are of the opinion that under the evidence defendant is estopped to assert that the boat was not seaworthy. Mr. Arthur was defendant's *general* agent. He made out the application "from his own knowledge of the boat." He collected the premium, countersigned and delivered the policy. His knowledge was the defendant's knowledge. As our cases say "for the purposes of this case he was the company." Browning v. Springfield Fire & Marine Ins. Co., 8 S.W.2d 941, 943 (Mo.App.). The testimony shows that Mr. Arthur had seen the boat two or three times while it was being fiberglassed. On the day he prepared the application he "examined" the boat. And based upon that examination, and not upon anything plaintiff said to him, he issued the policy. Assuming the boat had not been calked in order "to seal the cracks between the planks so that moisture from *inside* the boat couldn't get down between the planks to the underside" Mr. Arthur was bound to have known it. Even a casual observation would have disclosed it. Our holding that, under these circumstances, defendant is estopped to assert this defense is supported by the following authorities: Rickey v. German Guarantee Town Mut. Fire Ins. Co., 79 Mo.App. 485, syl. 1; Chamberlain v. British-American Assurance Co., 80 Mo.App. 589, 591, and Scarritt Estate Co. v. Casualty Co., 166 Mo. App. 567, 571, 572, 149 S.W. 1049.

■ Another objection lodged by defendant in its motion for new trial against the Instruction is that it failed to require a finding that plaintiff abandoned the boat and that the cost of repair and recovery exceeded the agreed valuation of $1500. As to abandonment, the matter was not in dispute. Defendant's answer alleged "that plaintiff abandoned said boat after it sank" and all of the evidence showed that fact. And the right to abandon, or conversely, acceptance by insurer of an abandonment, goes not to the issue of liability for a loss, but to the extent of the loss. That is, a total loss of agreed value or only a partial loss. Thus it would never have a place in the verdict directing instruction. It should appear in the instruction on the measure of damages, if at all.

Under a marine insurance policy there are basically two types of loss for which the insurer is liable for the full value of the policy: In the case of an "actual" total loss, and in the case of a "constructive" total loss. 29A Am.Jur. Ins. secs. 1570 and 1571, p. 666. The contract here involved provided that no recovery for a constructive total loss shall be had unless the expense of recovery and repair exceeds the agreed valuation. The agreed valuation was $1500.

Plaintiff's evidence disclosed in no uncertain terms that the cost of repairs and recovery exceeded the $1500 valuation. And defendant's evidence was to the same effect. Defendant's agent, Sauve, testified that the boat was "not economically repairable. By economically repairable, I was of the opinion at that time that the boat value in itself would not justify the cost of repairing it." And defendant's other witness (Brinckmann) testified as follows: "Q. Is it your opinion that this boat was economically speaking, a total loss at the time you found it? A. Well, the cost of putting it back in shape was such that in my opinion you could never get your money back out of it. Q. So it wouldn't have been practical to repair it? That's right."

■ It is not reversible error for a court to assume the existence of an undisputed or uncontradicted fact and omit it from an instruction. Cases cited in West's Mo. Digest, Vol. 27, Trial, ⊜192. We are of the opinion that the error, if any, did not materially affect the merits of the case.

The Instruction required a finding that "plaintiff duly made a demand upon defendant insurance company to fulfill its part of the contract of insurance, if so, and that defendant insurance company has refused said demand, if so, * * *." Defendant alleged in its motion for new trial that the Instruction failed to hypothesize facts showing the manner in which plaintiff made demand upon defendant.

The evidence discloses that immediately upon his return to Nevada from the Lake, plaintiff notified Mr. Arthur, defendant's agent of the loss; that Mr. Arthur in turn notified Mr. Robert Langford, who was branch manager for the Western Adjustment Company. Mr. Langford testified that he conferred with plaintiff a number of times about the loss; that he sent his adjuster Mr. Sauve, to investigate the loss and make a report. Sauve made a report to Langford. The latter sent it, together with a statement he had obtained from plaintiff, to defendant. Langford testified that he "never heard from the company." Both Langford and Sauve were admittedly agents of defendant. Plaintiff testified that he executed the necessary papers presented to him by Mr. Arthur and Mr. Langford for the notice and proof of loss; that he made frequent inquiries of them relative to payment of the loss; that he "contacted Mr. Arthur and Mr. Langford over at the Western Adjustment no less than, I'd say, twenty-five, thirty times. Both told me they had written several letters and were pretty much in the dark as to why they hadn't heard anything from the insurance company direct." Plaintiff also had his then attorney, Honorable Jack P. Pritchard, now Judge of the 28th Judicial Circuit, write to defendant and "we never got any response to that letter."

From the above it is clear that there was "no denial of the essential facts" showing that plaintiff made a demand for payment. Under these circumstances it was not necessary for the instruction to specifically hypothesize the facts relating thereto. The case of Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500, 501, cited by defendant, so holds. It also holds that if defendant felt that the instruction did not sufficiently hypothesize the facts it should have offered a "clarifying or amplifying instruction."

In our opinion, the instruction was not prejudicially erroneous, and, accordingly, the order granting a new trial is reversed

and the cause remanded with directions to reinstate the verdict and enter judgment thereon for the plaintiff.

All concur.