**Candace Louise PEAK, by her Mother and Next Friend, Margaret E. Peak, Respondent,**

v.

**W. T. GRANT COMPANY, Appellant.**

No. 52341.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1966.

Wilbur L. Pollard, North Kansas City, Williams, Norton & Pollard, North Kansas City, of counsel, for respondent.

Rodger J. Walsh, Kansas City, Rafter, Biersmith & Walsh, Kansas City, of counsel, for appellant.

HOLMAN, Judge.

Action for false arrest and imprisonment. Plaintiff obtained a verdict and judgment for $1,000 actual and $2,000 punitive damages. Defendant appealed to the Kansas City Court of Appeals and that court adopted an opinion affirming the judgment. Upon defendant's application we ordered the case transferred to this court and it will be determined here "the same as on original appeal". Civil Rule 84.05(h), V.A.M.R.; Mo.Const. Art. V, § 10 (1945), V.A.M.S. Plaintiff's sister, Pamela, previously obtained a judgment against Grant growing out of the same occurrence which was affirmed. See Peak v. W. T. Grant Company, Mo.App., 386 S.W.2d 685.

The incident here involved occurred on Saturday afternoon, December 15, 1962, in defendant's store located in the Antioch Shopping Center in Kansas City North, Missouri. That day was the largest selling day before Christmas and the store was crowded. Mr. Kenneth Burton was the manager of the store and Mr. Terry Knapp,

the assistant manager, was serving as floor supervisor.

Plaintiff, then 13 years old, together with her mother, her sister Pam then 16 years old, and her 12-year-old brother Tim, arrived at the shopping center about 2:30 p. m. to do their Christmas shopping. They decided to separate so they could make purchases without revealing what they were buying for each other. Pam went to the TG & Y Store, her mother to the Crown Drug Store, and plaintiff and Tim went to Grant's. Tim went to the toy department while plaintiff looked around in other sections of the store. One of defendant's clerks, Mildred Howard, testified that she observed plaintiff standing at a rack of car coats trying to get her purse closed; that "she was working with her purse trying to close it, but couldn't because it was too full to close"; that when she sought to wait on her she hurriedly left the department; that she then suggested to Mr. Knapp that he watch her because she was suspicious of her actions.

Terry Knapp testified that after Mrs. Howard talked with him he started watching plaintiff, and asked Mr. Stawicki, a security officer employed by the shopping center, to help him; that he noticed plaintiff's purse was very full; that plaintiff began to walk very rapidly, frequently changing directions; that she had been joined by her brother and when they neared the store exit they "ducked" under the railing; that he then asked the officer to stop them; that Mr. Stawicki showed plaintiff his credentials and, at his request, plaintiff and Tim accompanied them to a place near the luncheonette; that plaintiff's purse was still very full and Mr. Stawicki asked her if "we might see her purse," but she refused; that her brother grabbed her purse and tried "to hand it to us," but she grabbed it back away from him; that at that point her older sister Pam came up and asked that they be permitted to leave, but the request was denied; that Mr. Stawicki then left to get a uniformed police officer, and the brother went to get his mother; that

he and the two girls then moved to another area of the store, during which time plaintiff disappeared for about three or four minutes; that a few minutes later when plaintiff's mother arrived she directed that plaintiff hand the purse to Mr. Stawicki who had returned; it was then opened and nothing belonging to defendant was found therein. Plaintiff testified that she was detained almost an hour, and denied having taken anything from the store.

Both Knapp and Stawicki denied touching or holding onto plaintiff at any time, but plaintiff and several of her witnesses testified that they did. A large crowd gathered and observed the proceedings, and plaintiff, according to one witness, was crying hysterically.

On the question of damages there was testimony from plaintiff and members of her family, as well as her minister, that she cried for days after the incident, talked in her sleep, and did not go to school the following Monday.

Defendant's main contention on this appeal is that the court erred in giving Instruction No. 1 because it submitted the issue of Knapp's agency without any definition of that subject. The instruction reads as follows:

"[MAI No. 23.04, modified—offered by plaintiff] Your verdict must be for plaintiff if you believe: First, witness Knapp was agent for, and at all times mentioned herein was the agent of, defendant W. T. Grant Company, and acting for and on behalf of the defendant and within the scope of his employment, and Second, witness Knapp intentionally restrained plaintiff against her will, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4."

It will be noted that the instruction was basically MAI 23.04. However, plaintiff had alleged in her petition that "At all times herein mentioned, one Terry Lee Knapp was the Assistant Manager of the store of defendant W. T. Grant Company,

and was acting in that capacity for and on behalf of defendant W. T. Grant Company, and within the scope and authority of his employment." Defendant, in its answer, had denied that allegation and hence it was a contested issue in the case Therefore, plaintiff properly included paragraph "First" submitting the issue of agency in a manner similar to that suggested in MAI 18.01. Plaintiff did not, however, follow the directions under "Notes on Use" relating to 18.01 which stated that "[w]hen the issue of agency is submitted, the appropriate definition must also be submitted. See 13.02 to 13.06." MAI 13.02 would appear to have been appropriate for that purpose.

In connection with a consideration of the necessity of definitions concerning agency we note that it is stated in MAI 13.01, that "As the pattern instructions submit only ultimate issues, a question of respondeat superior liability might be submitted simply 'The driver Jones was operating the (defendant's) motor vehicle within the scope and course of his agency for (defendant).' But these words alone are not apt to mean much to lay jurors, so some clarification is needed. The definitions following are intended to supply this clarification."

■ We have concluded that the court committed reversible error in failing to give the jury an instruction containing an appropriate definition upon the issue of agency. The basic theory concerning the use of MAI is that when an approved instruction is applicable it must be given to the exclusion of any other instruction on the same subject. In choosing appropriate instructions and modifications thereof it is essential that attorneys carefully consider the committee comments and follow the directions contained in "Notes on Use." As stated at page XXXIV in Vernon's MAI, "The notes on use following each instruction dictate the circumstances under which the instruction may be used. These must be followed." Unless those directions are followed the use of the comparatively new

MAI procedure cannot be successful. In this instance the directions were not followed, as it is unequivocally stated under "Notes on Use" of 18.01 that when agency is submitted the appropriate definition *must* also be submitted. For the reasons indicated we rule that the judgment must be reversed and the cause remanded for a new trial.

■ Defendant also contends that plaintiff did not make a submissible case because it had reasonable grounds to believe that plaintiff had wrongfully taken merchandise and hence, under § 537.125 RSMo 1961 Supp., V.A.M.S., it had a right to detain her in a reasonable manner, for a reasonable length of time, for investigation, which was all that was done. We think our factual statement is sufficient to demonstrate that there was substantial evidence to support the submission of the case both as to actual and punitive damages and we accordingly rule this point against defendant. A defense based on § 537.125, supra, was submitted to the jury in Instruction No. 4.

There is a contention relating to admission of evidence which we deem advisable to consider as it will likely recur in the event of another trial. Plaintiff's Exhibit No. 2 was defendant's Operation Manual on Shoplifting. Over objection the court permitted the following portions to be read to the jury:

"All employees should be familiar with procedures for handling shoplifters as outlined below, and managers should review them with employees at least twice a year.

"A. Handling of shoplifters. Alertness of store employees is the best way of preventing shoplifting. Salespeople should attempt to serve suspicious shopper promptly, to discourage the possibility of shoplifting. An employee actually seeing a shopper conceal merchandise should approach the shopper immediately and in a courteous way ask for pay-

ment of the merchandise by saying, 'Do you wish to pay for the (blank) you have in your bag?' Prompt attention in this matter will prevent shoplifting in most cases. To call for supervisor when shoplifting is suspected, salesperson should call register number, followed by one-half. If the register is number twenty-five, she would call twenty-five and one-half. Such a call will indicate shoplifting to the supervisor, who will come immediately.

"B. Apprehending of shoplifters. In cases when it is desirable to make an arrest, the procedures outlined below must be carefully adhered to. A shoplifter, after having been detected, is to be watched until he or she leaves the store. * * *

"Employees should never attempt to apprehend shoplifters, nor is anyone to be detained on the unsupported accusation of a saleswoman. The manager, or in his absence the assistant manager, is to be notified of suspicious appearing persons. An employee who sees merchandise taken is to ask another employee to call the manager or assistant manager while she continues to watch suspect, for suspects often drop merchandise or return it to counter when they feel they were seen taking. The detection of a person stealing is not to be cause for excitement or loud talking. Do not try to make an example of a supposed thief as a warning to other people, as sympathy is usually with the accused, and witnesses hope that you are wrong and accused is right. * * *

"The best way to approach a person who has merchandise which has not been paid for is to ask the person, 'Did you forget to pay for that article?' Or, if merchandise is concealed while in the store, 'You have (blank) in your hand; did you keep it and forget to pay for it?' Of course, if the store employee is vigilant he will know whether the merchandise is still in the possession of the sus-

pect. Never detain a person upon uncorroborated word of saleswoman or customer, as they may be mistaken or suspected person may have passed it to a confederate and have nothing on him when stopped. * * *

"In stores in which office is within view of sales floor it is advisable to take shoplifter to stockroom, employees' restroom, or other place not within the view of the sales floor; but if a confession is obtained promptly the suspect should either be released (if a mistake was made) or arrested."

Defendant says that those directives were not admissible because they were irrelevant and constituted confidential legal advice between defendant and its employees. Defendant has not cited any case in support of that contention. Plaintiff, in support of her contention of admissibility, relies entirely upon Peak v. W. T. Grant Company, supra, in which the exhibit was held to be admissible. We agree with defendant's suggestion that the court in Peak, supra, relied, in part, upon the fact that the material in question was first brought into the case when defendant's counsel questioned certain witnesses concerning it. However, the court also stated that the exhibit, "as it concerned shoplifting instructions and procedure was material to the issue of Knapp's authority. It was also material to the issue of punitive damages." 386 S.W. 1. c. 692.

While we have found very little authority directly relating to the subject we have concluded that the quoted portion of the exhibit was properly admitted. Those were simply rules adopted by defendant governing the conduct of its employees in handling shoplifting situations. As stated in the companion case, "defendant is liable for the wrongful arrest and detention of plaintiff only if its employee, Mr. Knapp, in so doing acted within the scope of his authority, express or implied." 386 S.W.2d 1. c. 689. It seems to us that the written directions of defendant to its employees is proper evidence for the jury to

consider in determining whether Knapp was acting within the scope of his authority. Also, those rules should have been of assistance to the jury in determining whether defendant's conduct was "willful, wanton, or malicious," and hence whether punitive damages should have been awarded. It should perhaps be mentioned, by way of analogy, that the employer's safety and operating rules governing the conduct of the employees of railroads are usually held admissible. As indicated, we hold that the quoted portion of the exhibit was admissible.

Other points briefed relate to matters which will not likely recur upon another trial and need not be discussed herein.

Reversed and remanded.

All concur.