Thomas A. MORRIS, Respondent,

v.

CONTINENTAL CASUALTY COMPANY, Appellant.

No. 24625.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1967.

Application for Transfer Denied Feb. 12, 1968.

R. Lawrence Ward, Shughart, Thomson & Kilroy, Kansas City, for appellant.

Samuel J. Molby, Clayton R. Smalley, Kansas City, of Counsel, Watson, Ess, Marshall & Enggas, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is a suit to recover medical and hospital expenses under a group major medical insurance policy issued by the appellant company. Respondent obtained a judgment below and the company duly appealed to this court. We shall refer to the parties as they appeared below.

Plaintiff was employed as a claims attorney by Bruce Dodson and Company in Kansas City, Missouri. As such employee he elected to become insured as to himself, his wife and family for medical, hospital and surgical expenses under the group policy issued by the defendant to Bruce Dodson and Company and covering its employees. This policy and the rider on which defendant relies, were both effec-

tive as to plaintiff and his wife on June 1, 1960. Plaintiff's wife had long been a diabetic and plaintiff so stated on his application for insurance. By a rider to the policy the coverage was limited as follows:

"1. Subject to the limitation in Paragraph 2 hereof, 'sickness' wherever used in the policy means sickness or disease causing loss commencing after the effective date of coverage of the insured employee or insured dependent whose sickness is the basis of claim and resulting in loss covered by the policy.

"2. Expenses incurred after the effective date of this rider as the result of sickness for which medical treatment was received or recommended by a legally qualified physician or surgeon prior to the effective date of insurance as to the insured employee or insured dependent will be covered only if a period of 24 months ending after the effective date of coverage as to the insured employee or insured dependent has elapsed, and during which period there has been no medical treatment rendered or recommended for such sickness."

Defendant originally denied plaintiff's claim on the ground that the expenses resulted from the diabetic condition of plaintiff's wife; that she had diabetes long before the effective date of the policy and had received continuous treatment therefor, and that the claim was specifically excluded by the above quoted portion of the rider.

Plaintiff brought this suit on the basis that his wife contracted glomerulosclerosis after the effective date of the policy and that she had not received treatment therefor until January of 1962. Plaintiff's wife had been a diabetic since 1945 and was under the continuous care of various doctors for that condition, and took daily injections of insulin. In December of 1959 she was hospitalized in St. Luke's Hospital in Kansas City, Missouri, for the treatment of a persistent infection in her right thigh

and other complaints. The final diagnosis listed in the discharge summary in the hospital records for this period of hospitalization was cellulitis right thigh; diabetes mellitus; Kimmelstiel-Wilson's syndrome; fungus infection of the fingernails with a secondary paronychia. The medical witnesses agree that "Kimmelstiel-Wilson's syndrome" and "glomerulosclerosis" are synonymous and mean the same thing. The doctors who treated Mrs. Morris during this December 1959 hospitalization did not appear as witnesses at the trial. The record does not explain why they were not called as witnesses. In August, 1961, Mrs. Morris first went to Dr. Kettner, who testified for plaintiff. During all this time Mrs. Morris had been an active housewife, leading a relatively normal life caring for three children and performing all her household duties. After Christmas in 1961, or early in January of 1962, there was a pronounced change for the worse in her condition, and she was hospitalized in St. Mary's Hospital, in Kansas City, Missouri, on January 26, 1962. At this time, Dr. Kettner for the first time definitely diagnosed her condition as glomerulosclerosis. She was discharged from St. Mary's February 7, 1962 "even though it is felt that her prognosis is very poor and that she will undoubtedly have to be rehospitalized. However, it is felt that she should be permitted to spend some time at home at this stage". The doctor advised Mr. Morris of the seriousness of her condition.

Mrs. Morris's older brother was a doctor in New York City, and when he was advised of the situation he insisted that she come to New York and consult with the doctors there. She did so and first entered New York Eye and Ear Infirmary. She was then transferred to Doctors Hospital in New York City, on March 17, 1962, where she died on April 7, 1962. Plaintiff's claim is for hospital and doctor bills incurred from the time of her hospitalization in St. Mary's Hospital, in Kansas City, Missouri, on January 26, 1962, until her death on April 7, 1962.

On this appeal defendant alleges error in the failure of the trial court to sustain its motion to set aside the verdict and judgment for plaintiff and enter judgment for defendant in accordance with its motion for directed verdict. Defendant's contention is well summarized by a paragraph from its brief which reads as follows: "The transcript of the trial of this case will reflect that the only evidence in this case was to the effect that Lorraine Morris was afflicted with and suffering from the disease of glomerulosclerosis prior to June 1, 1960. That she continued to receive treatment for glomerulosclerosis subsequent to June 1, 1960, and prior to her death, and that no twenty-four month period elapsed subsequent to June 1, 1960, during which time she was not undergoing treatment for the disease of glomerulosclerosis."

As heretofore indicated the doctors who treated Mrs. Morris during her December 1959 hospitalization in St. Luke's Hospital did not testify. Dr. Kettner was plaintiff's only medical witness and Dr. Charles B. Wheeler, Jr., then coroner of Jackson County, a pathologist, was defendant's only medical witness. Dr. Wheeler had not examined or treated Mrs. Morris.

Glomerulosclerosis was described as "a condition in which there are deposits of a peculiar material in certain parts of the kidneys, which lead to generalized deterioration of kidney function, among other things". The evidence indicates that this condition caused the very small blood vessels in the kidneys and in the eyes and in other places of the body to deteriorate and fail to function properly. The result is kidney failure, which in Mrs. Morris's case caused uremia, nephrosclerosis and death. Not all diabetics develop glomerulosclerosis. The percentage was set by the witnesses at 20% to 25%. It may be that persons who are not diabetics can develop glomerulosclerosis, but the evidence as to this is not satisfactorily clear.

Both Drs. Kettner and Wheeler examined the hospital records from St. Luke's Hospital for Mrs. Morris's stay in 1959. Dr. Kettner testified that he would not base a diagnosis of glomerulosclerosis on the findings contained in the record. However, he specifically refused to state that she did not have glomerulosclerosis at that time. He stated that he would not quarrel with the diagnosis of the doctors who treated her. Dr. Wheeler from his examination of these records gave his opinion that Mrs. Morris did have glomerulosclerosis at the time of her hospitalization at St. Luke's in December of 1959.

From the testimony of these two doctors it appears that glomerulosclerosis is what is described as an "irreversible" disease. There is no cure for the disease, and the only thing that can be done is to try to control the patient's diabetes, so as to keep the condition of glomerulosclerosis from getting progressively worse. Dr. Kettner testified: "Q. What sort of treatment is there for this glomerulosclerosis? A. Well, essentially, there really is none, because once they have it, it's what we call an irreversible illness. In other words, you can't do anything that will cure it; all you can do is to try to prevent it from getting worse". Although Dr. Wheeler used different words to describe the situation, his testimony was to the effect that there was no cure for glomerulosclerosis and that the only thing that could be done was to control the diabetes. Both doctors testified that the hospital records from December, 1959, at St. Luke's showed no treatment for glomerulosclerosis, as such, but only treatment for the diabetes and the infection. During this hospital stay her insulin dosage was increased. Dr. Kettner testified that when Mrs. Morris became his patient in August of 1961, he did not at that time diagnose her condition as glomerulosclerosis, although he stated that with her, as with any other long term diabetic, there was always a strong suspicion of glomerulosclerosis. In the early stages of this disease it is very difficult to diagnose;

the only certain way is laboratory examination of tissue from the kidney and this is seldom done, and was not done in Mrs. Morris's case. He stated that he treated her for the diabetes and not for the glomerulosclerosis. This treatment consisted of strict diet and insulin.

Dr. Kettner did not diagnose Mrs. Morris's condition as glomerulosclerosis until her hospitalization in January of 1962, and he did not treat her for such condition until that time. He, as well as Mr. Morris, testified that there was a profound change in Mrs. Morris's condition early in January, just prior to this hospitalization.

Defendant contends that it was entitled to a directed verdict under the provisions of the rider on the policy excluding coverage of expenses resulting from any disease existing, and for which treatment was received or recommended, prior to the effective date of the policy, June 1, 1960, unless the insured had a 24 month period ending after the effective date of the policy, during which she did not receive treatment or have treatment recommended for such pre-existing disease or condition. Defendant's argument is two pronged—(1) Mrs. Morris had glomerulosclerosis prior to June 1, 1960, and received treatment therefor, and (2) Mrs. Morris received continuous treatment for this condition, and therefore did not have the 24 month period free from treatment or recommended treatment.

On the other hand plaintiff's claim was that Mrs. Morris did not have glomerulosclerosis until January of 1962, after the effective date of the policy, and that, even if she did have glomerulosclerosis prior to June 1, 1960, she did not receive treatment therefor for the 24 month period prior to her hospitalization in January of 1962, because there was no treatment for glomerulosclerosis; the only treatment she received was insulin and the insulin was treatment for diabetes, not glomerulosclerosis.

In our foregoing review of the evidence, it is apparent that there is a conflict as to whether or not Mrs. Morris had glomerulosclerosis and received treatment thereof, at the time of her hospitalization in St. Luke's Hospital in 1959. The jury could have found either way on that issue but the instruction offered by defendant and given by the court assumed that Mrs. Morris did, in fact, have glomerulosclerosis and received treatment therefor, at some date prior to the effective date of the policy. Therefore, we need not consider this issue in detail.

Under this instruction of defendant, the jury was required to find as a prerequisite for a verdict for plaintiff that Mrs. Morris did not receive treatment for glomerulosclerosis for a 24 month period prior to January 1962. Thus it is obvious that the jury found that she did not receive such treatment during such period when they returned a verdict for plaintiff. As indicated the evidence is that there is no specific treatment for glomerulosclerosis; all that can be done is to control the diabetes and thereby try to keep the glomerulosclerosis from getting worse; that the only treatment Mrs. Morris received was insulin and that insulin is treatment for diabetes. Thus, under the instruction given at the request of defendant, the jury could, as they did, find no treatment for the required period. In such circumstances defendant was not entitled to a directed verdict and the trial court did not err in this respect.

Defendant also complains that plaintiff's verdict directing instruction, Instruction No. 3, was erroneous because it did not require the jury to find that the medical and hospital expenses for which plaintiff was suing were the result of the disease of glomerulosclerosis. Instruction No. 3 reads as follows:

"*Instruction No. 3* (Given)

"Your verdict must be for plaintiff if you believe:

That plaintiff paid and incurred medical, hospital and surgical expenses for

the care and treatment of his wife, Lorraine Morris, at the times mentioned in evidence, unless you further find the issues for defendant under Instruction Number 4.

(Not MAI; by the plaintiff)"

It is true that plaintiff's claim was based upon Mrs. Morris having the condition of glomerulosclerosis and upon the contention that the expenses sued for were brought about by such condition. This instruction does not specifically require a finding by the jury that Mrs. Morris had glomerulosclerosis, or that the expenses resulted therefrom. However, this instruction does refer to defendant's affirmative defense in Instruction No. 4, which reads:

"*Instruction No. 4* (Given)

Your verdict must be for the defendant if you believe:

That Lorraine Morris had received treatment for the disease of diabetic glomerulosclerosis within a twenty-four month period prior to January, 1962. (Not MAI; by the defendant)"

Thus, when these two instructions are read together, as they must be, the jury was instructed to find for the plaintiff, if he incurred medical and hospital expenses for the treatment of his wife (and there was no dispute that he did) unless they found that plaintiff's wife received treatment for glomerulosclerosis within a twenty-four month period prior to January, 1962. When these two instructions are read together we do not believe that the jury was confused in view of the fact that the whole case was about glomerulosclerosis and the only argument between the parties was whether on not she had glomerulosclerosis before the effective date of the policy and whether or not she received treatment therefor. It is true that a verdict directing instruction must require the jury to find all necessary elements of plaintiff's case. However, there is an exception to this requirement where it is unmistakably apparent that certain facts are conceded by both parties. See Welch v. McNeely, Mo., 269 S.W.2d 871; Meade v. Kansas City Public Service Co., Mo., 250 S.W.2d 513; State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W.2d 788; White v. Citizens Ins. Co. of New Jersey, Mo.App., 355 S.W.2d 421 and Clark v. Howard, Mo.App., 273 S.W. 2d 771.

The record in this case does not contain the closing arguments of counsel. However, from the whole course of the trial it is apparent that there was no contest as to whether or not Mrs. Morris had glomerulosclerosis and that the expenses sued for resulted therefrom. Both sides admittedly tried the case on the basis that she had the disease at least from the time of her hospitalization in January of 1962 until her death. Defendant contended that she had it from the time of her hospitalization in 1959 until her death, and its instruction assumed such fact. If she did not have glomerulosclerosis and if the medical and hospital expenses did not result therefrom, then Instruction No. 4 did not present a valid defense under the policy rider pleaded and relied on by defendant. Instruction No. 4, offered by and given on behalf of defendant, assumed that the expenses resulted from glomerulosclerosis, just as did plaintiff's Instruction No. 3. The paragraph heretofore quoted from defendant's brief is based on such assumption. In its reply brief defendant for the first time argues that there was evidence from which the jury could have found that the expenses resulted from a disease other than glomerulosclerosis. A careful examination of the record reveals that such evidence is not substantial when conditions resulting from glomerulosclerosis are excluded. This argument is contrary to the theory on which both parties tried the case and is contrary to the theory on which defend-

ant submitted its Instruction No. 4 and on which it based its original brief. In such circumstances, we hold that the technical error in omitting from Instruction 3 an affirmative requirement that the jury find that Mrs. Morris had glomerulosclerosis and that the expenses sued for resulted from such disease, was not prejudicial to defendant. In reaching this conclusion we are mindful of the fact that defendant pleaded and relied upon an affirmative defense based upon the quoted provisions of the policy rider and that it had the burden of proof on such issue. See Gennari v. Prudential Ins. Co. of Am., Mo., 335 S.W. 2d 55 and Jackson v. Pacific Mutual Life Ins. Co., Mo.App., 308 S.W.2d 291.

Defendant's last point is that the court erred in refusing to give its offered Instruction No. 9, which reads:

*"Instruction No. 9* (Refused)

Your verdict must be for the defendant if you believe:

First, that Lorraine Morris was inflicted with the disease of diabetic glomerulosclerosis prior to the effective date of the policy mentioned in evidence, June 1, 1960, and
Second, the medical expenses incurred by the plaintiff after June 1, 1960 were the result of diabetic glomerulosclerosis, and

Third, Lorraine Morris had received treatment for the disease of diabetic glomerulosclerosis within a twenty-four month period ending after the effective date of the policy, June 1, 1960.

(Not MAI; by the defendant)"

■ It will be noted that this instruction first required a finding that Mrs. Morris suffered from glomerulosclerosis prior to the effective date of the policy, June 1, 1960. As heretofore pointed out, Instruction No. 4 given for defendant, assumed this fact, which had been con-

tested during the trial. Therefore, if the court had given Instruction 9, it would have conflicted with Instruction No. 4 requested by defendant, and given by the court. Such conflict would not be permissible. If the court erred in giving Instruction No. 4 instead of Instruction No. 9 such error was invited by defendant, and it cannot now complain. A party cannot offer two conflicting instructions and then object when the court gives one rather than the other, and since they are conflicting, he does not have a right to both. If both were given it would be prejudicial error. See Tetherow v. St. Joseph & D. M. R. Co., 98 Mo. 74, 11 S.W. 310; St. Louis, K. & N. W. R. Co. v. Knapp, Stout & Co., 160 Mo. 396, 61 S.W. 300; Kelley v. United Mutual Ins. Ass'n, 236 Mo.App. 748, 149 S.W.2d 905 and Mundy v. Missouri Power & Light Co., 231 Mo.App. 555, 101 S.W.2d 740.

■ Instruction No. 9 purports to be a complete instruction covering the entire case. However, at the request of the defendant, the court gave Instruction No. 4, which assumed that Mrs. Morris had glomerulosclerosis prior to the effective date of the policy, which was an issue that No. 9 required the jury to find. Thus Instruction No. 4 was more favorable to the defendant than Instruction No. 9, and it cannot now complain that the court gave an instruction more advantageous to the defendant than it was entitled to.

■ Also, it appears that the third paragraph of the instruction is incorrect under the provisions of the policy rider relied on by defendant. This paragraph directed a verdict for defendant if Mrs. Morris "received treatment—within a [any] twenty-four month period ending after the effective date of the policy", whereas the rider did not take away coverage unless there was no 24 month period ending after the effective date of the policy during which treatment was not received or recommended. Furthermore, paragraph one of this instruction refers to pre-exist-

ing disease, but neither in this paragraph, nor anywhere else in the instruction is reference made to treatment received or recommended prior to the effective date as is required by the rider. The trial court cannot be convicted of error in failing to give such an incorrect instruction. See Norris v. Winkler, Mo.App., 402 S.W.2d 24 and Orloff v. Fondaw, Mo. App., 315 S.W.2d 430.

Finding no prejudicial error in the case, the judgment below is affirmed.

All concur.