Charley RATTERREE and Brexine Ratterree, Plaintiffs-Respondents,

v.

GENERAL MOTORS CORPORATION, a corporation, Defendant, and Carl Honeycutt Chevrolet-Oldsmobile Company, a corporation, Defendant-Appellant.

No. 8957.

Springfield Court of Appeals, Missouri.

Nov. 12, 1970.

**310**

Hiett & Becker, Wm. Duke Hiett, R. M. Becker, Houston, for defendant-appellant, Carl Honeycutt Chevrolet-Oldsmobile Co.

John Alpers, Jr., Cabool, for plaintiffs-respondents.

STONE, Judge.

This is a jury-tried bailment case flowing from an aborted arrangement to replace a torn headliner in a new 1968 Chevrolet Bel Air sedan purchased by plaintiffs, Charley Ratterree and Brexine Ratterree, his wife, from defendant, Carl Honeycutt Chevrolet-Oldsmobile Company, a corporation, the Chevrolet dealer at Houston, Missouri. At the close of plaintiffs' evidence, the trial court directed a verdict in favor of defendant, General Motors Corporation, the propriety of which is not here in question. At the close of all the evidence, the jury returned a verdict against defendant Honeycutt in the sum of $2,201 and, from the judgment entered thereon, that defendant appeals. The insistence that plaintiffs did not make a submissible case, as well as certain complaints about instructions, necessitates a factual review.

When plaintiffs' new automobile was delivered to them at defendant's place of business on March 13, 1968, there was "a three-cornered tear . . . about an inch each way" in the headliner. Plaintiff Charley's father, Clyde Ratterree, then defendant's "shop foreman," told Carl Honeycutt, the president of defendant corporation, about this tear, and Mr. Honeycutt "agreed to replace the headlining with a new one." According to plaintiff Charley, "they said they would order . . a new one and have it installed," and his father Clyde stated "we agreed to put a new one in . . . or have it done . . Chevrolet or us was to furnish the headliner." Defendant "had a place . . . for body work . . . but no one employed as a body man," so it was contemplated by Mr. Honeycutt that the headliner "would be replaced by an outside body shop [in Houston], Sillyman's Reliable Auto Body Shop." At the time of trial, neither plaintiff Charley nor his father Clyde remembered whether, on March 13 when the tear was discovered, there was any mention of or discussion about the fact that Kyle Sillyman would install the new headliner when it became available. However, plaintiff Charley knew that defendant's "body repair work [was] done at other garages" and that Sillyman "did some of it"; and, at some time within the month following March 13, he became possessed of knowledge "that [defendant] was aiming to turn it [the 1968 Chevrolet] over to Mr. Sillyman," which "was all right with [him]." But there was no discussion or arrangement between plaintiff Charley and Sillyman; and, as the latter confirmed upon trial, his agreement for installation of the new headliner was with defendant Honeycutt and, if the headliner had been replaced, defendant would have paid the bill.

The next relevant event chronologically, as pleaded in plaintiffs' petition, was "that *defendants . . . through their agents requested plaintiff* (sic) *to deliver said 1968 automobile to the place of business of defendant* [*Honeycutt*] *. . . on April 13, 1968,* for the purpose of replacing said defective headliner and that *plaintiffs, pursuant to said request did deliver to the regular place of business of defendant* [*Honeycutt*] *. . . said 1968 Chevrolet automobile on April 13, 1968,*" at which time and place "*defendants . . . through their agents took delivery of said 1968 Chevrolet automobile from plaintiffs . . .* and agreed to return said automobile to plaintiffs on demand." (All emphasis herein is ours.) In its answer, defendant Honeycutt admitted "that it requested the plaintiffs to deliver said 1968 automobile to its place of business in Houston, Missouri, on April 13, 1968, for the purpose of having said headliner replaced with a new headliner" but denied the other above-quoted averments in plaintiffs' petition to the

effect that the automobile was so delivered or that "defendants . . . through their agents took delivery" thereof.

Plaintiffs resided in Springfield, Missouri, where plaintiff Charley was employed in a manufacturing plant from 5 P.M. to 1:30 A. M. The record does not disclose how, when or by whom defendant Honeycutt's request to deliver plaintiffs' Chevrolet to defendant's place of business on Saturday, April 13, was given; but it is undisputed that, after plaintiff Charley got off work at 1:30 A.M. on that date, he and his wife drove to the home of his parents about one mile north of Houston, arriving there about 3:30 to 4 A.M. Plaintiffs left their automobile there "for [Charley's father Clyde] to take it to have this headliner put in" and borrowed Clyde's automobile in which they drove to the home of plaintiff Brexine's parents and later to Mountain Grove. Both plaintiff Charley and Clyde stated, in substance, their understanding that the latter "was supposed to bring [plaintiffs' Chevrolet] into town and it was supposed to be fixed that day," that Clyde would return the automobile to his home the same evening "if it was ready," and that plaintiffs would "pick it up" there that evening or "at church" the following morning.

Defendant Honeycutt did not furnish transportation to Clyde, and he usually drove his own automobile to work, leaving home about 7 A.M.; but, since plaintiffs had borrowed his automobile on the morning of April 13, he drove to work that day in their Chevrolet and parked it "on the street." While working in defendant's "garage" later that day (the time of day not being revealed in evidence), Clyde "pulled" his pants and, using plaintiffs' Chevrolet, drove home to change into another pair. On the return trip, he drove by Sillyman's Reliable Auto Body Shop. Sillyman was not there but Clyde talked with one Tom Stanton, not then known to Clyde but "apparently . . . employed

there—he looked like it." In response to Clyde's inquiry whether "there was someone could come up with me and take the car [plaintiffs' Chevrolet] back to the body shop," Stanton said that he would. Clyde "drove back up in front of the garage with [Stanton] . . . got out of the car and turned it over to him." At that time Carl Honeycutt, the president of defendant corporation, and Kyle Sillyman were talking together *inside* defendant's place of business and both of them saw Stanton drive away in plaintiffs' Chevrolet. Upon trial, Sillyman testified that Stanton had been employed at the body shop a "very short time . . . two, maybe three weeks," and was not authorized to drive a customer's vehicle without his (Sillyman's) express permission. When the interested parties next saw plaintiffs' Chevrolet later that day, it was "demolished." Upon trial it was stipulated the damage thereto was $2,301, of which plaintiffs had collected $100 from Stanton.

█ A bailment is essentially a contractual arrangement [8 Am.Jur.2d Bailments § 43, p. 950]; and, as generally used, the term "bailment" signifies a contract resulting from delivery of a thing by the bailor to the bailee on condition that it be restored to the bailor in accordance with his directions as soon as the purposes for which it was bailed are satisfied. Equity Mutual Ins. Co. v. Affiliated Parking, Inc., Mo.App., 448 S.W.2d 909, 914; Weinberg v. Wayco Petroleum Co., Mo.App., 402 S.W.2d 597, 599(4); Nuell v. Forty-North Corp., Mo.App., 358 S.W.2d 70, 75(3); Samples v. Geary, Mo.App., 292 S.W. 1066, 1067(2). "The very nature of a bailment requires that there be a delivery by the bailor and an acceptance by the bailee of the subject matter of the bailment." 8 Am.Jur.2d Bailments § 54, p. 960. See Suits v. Electric Park Amusement Co., 213 Mo.App. 275, 279, 249 S.W. 656, 657(2); Hope v. Costello, 222 Mo.App. 187, 193, 297 S.W. 100, 103; Mid-America Transportation Co. v. St. Louis Barge Fleeting

Service, Inc., D.C.Mo., 229 F.Supp. 409, 411(4, 5), affirmed 8 Cir., 348 F.2d 920. And where, as here, the party sought to be charged as bailee is a corporation, acceptance of the subject matter of the bailment necessarily must be by an agent, acting within the scope of his authority, actual or apparent. Cf. Wynn v. McMahon Ford Co., Mo.App., 414 S.W.2d 330, 336(7).

Instant plaintiffs recognized these elemental but fundamental truths by pleading, as we have noted, "that *defendants . . . through their agents* requested plaintiff (sic) to deliver said 1968 automobile *to the place of business of defendant* [Honeycutt] . . . on April 13, 1968," that plaintiffs delivered their automobile at the stated time and place pursuant to said request, and that "*defendants . . . through their agents took delivery*" thereof. Plaintiffs' evidence established that, from the time they left their Chevrolet automobile with Clyde at his home early on the morning of April 13 to the time (not indicated in the record) later that day when he relinquished control of that vehicle to Sillyman's (unauthorized?) employee Stanton, Clyde was in sole possession and control thereof. Assuming that he purported to accept the automobile for and on behalf of his corporate employer, the critical question remained as to whether or not his action in so doing was within the scope of his authority, actual or apparent, for it cannot well be gainsaid that all acts of any employee are not necessarily within the scope of his employment. Cf. Brannaker v. Transamerican Freight Lines, Inc., Mo., 428 S.W.2d 524, 534(12).

■ Clyde's authority to accept delivery of the automobile for and on behalf of his corporate employer was a controverted issue on the face of the pleadings [Peak v. W. T. Grant Co., Mo. (banc), 409 S.W.2d 58, 60, 31 A.L.R.3d 697, 702], and the burden of proof on that issue indubitably rested upon plaintiffs. Chandler v. New Moon Homes, Inc., Mo. (banc), 418 S.W.2d 130, 135–136(4, 6). But the only evidence directed to that issue was Clyde's unelaborated answer "*I was shop foreman*" in response to the inquiry, "*what were your duties on March 13, 1968*," and plaintiff Charley's like answer "*he* [Clyde] *was shop foreman*" to a similar question. The interrogation of witness Carl Honeycutt, defendant's president, who was called during plaintiffs' case in chief, developed in this factual area nothing more than his ready agreement with counsel's "questions" that "Clyde works there for you, has ever since you started in the business" (whenever that may have been) "[a]nd is continuing to work there." So, the evidential portrayal of Clyde's duties and authority *on April 13, 1968*, the date of the alleged delivery of plaintiffs' automobile to defendant, was indistinct, indefinite, incomplete and altogether inadequate. This was emphasized by the blind spots wholly unilluminated by evidence—e. g., nothing was disclosed regarding Clyde's duties, responsibilities or scope of authority as "shop foreman," or pertaining to the nature, size or location of defendant Honeycutt's shop or other physical facilities, or concerning the number of persons employed by defendant in the shop or elsewhere, or as to whether or not defendant had a "service manager" who, as is commonly known by those dealing with automobile agencies, frequently if not usually is the employee charged with handling or supervising matters such as replacement of a torn headliner in a new automobile. And the evidential picture was further clouded by Clyde's testimony, again unelaborated, that his "*duties*" at the time of trial, May 13, 1969, were "*new car service*." Certainly, there was no evidence that Clyde had *actual* authority to accept, on behalf of defendant Honeycutt, delivery of plaintiffs' automobile at his home early on the morning of April 13 or, for that matter, elsewhere. Of course, we recognize that *apparent* authority of an agent to perform certain acts or functions may be inferred from an appropriate state

of facts;[1] but, in the circumstances of the case at bar, it becomes unnecessary for us to treat at length of that doctrine here.

Plaintiffs' only instruction numbered 2 "Not in MAI" utterly ignored the issue as to Clyde's authority to accept delivery of plaintiffs' automobile on behalf of defendant Honeycutt, and directed a verdict if the jury believed (1) plaintiffs were owners of the 1968 Chevrolet, and (2) defendant Honeycutt "through its employees, requested plaintiffs to deliver said automobile to its place of business on April 13, 1968, for the repair of the headliner . . . " and (3) "plaintiffs delivered said automobile to defendant [Honeycutt's] regular place of business on the morning of April 13, 1968," and (4) the automobile was returned to plaintiffs in a damaged condition. If there was any uncertainty arising *either* from conflict in the evidence *or* because the undisputed facts would have permitted reasonable men to draw different conclusions as to whether Clyde acted within the scope of his employment as "shop foreman" in purporting to accept (if he did) plaintiffs' automobile on behalf of his corporate employer, that question was not one of law for the court but rather one of fact to be determined by the jury. De Mariano v. St. Louis Public Service Co., Mo., 340 S.W.2d 735, 739–740(2); Wehrman v. Liberty Petroleum Co., Mo.App., 382 S.W.2d 56, 62(8); Robertson Canning Co. v. Davis, Mo.App., 15 S.W.2d 882, 883(5); 3 Am.Jur.2d § 360,

p. 719; 3 C.J.S. Agency § 330b(2), p. 328. Considering all of the evidence hereinbefore digested in the light most favorable to plaintiffs, according to them the benefit of all favorable inferences flowing therefrom, and disregarding defendant's evidence except as it might aid plaintiffs [Dressler v. Louvier, Mo. (banc), 408 S.W.2d 852, 853(1); Haymes v. Swan, Mo.App., 413 S.W.2d 319, 324(1)], we are of the opinion that, on the record before us, it may not be fairly and reasonably concluded *as a matter of law* that Clyde's purported acceptance (if so) of plaintiffs' automobile on behalf of his corporate employer was within the scope of his employment as "shop foreman." If it be assumed, as we do for the purposes of this opinion, that the evidence would have *permitted* such finding by the triers of the facts, this issue should have been submitted in plaintiffs' verdict-directing instruction in a manner compatible with that outlined in MAI 18.01 and an appropriate definition of agency should have been given. See the "General Comment" in MAI 13.01 and the definition of "Agency—Scope of Employment" in MAI 13.05; and consult again Peak v. W. T. Grant Co., supra, 409 S.W.2d at 59–60.

Plaintiffs also argue that "the question of agency was not in issue" and therefore there was no error "in failing to instruct the jury on the issue of agency and the definition of agency" because defendant's instruction 4 "Not in MAI," designed to

1. "In order to establish that an agent had the apparent authority to do the act in question, it must be established (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal

. . . . In cases wherein the above prerequisites exist, the scope of the apparent or ostensible power and authority of an agent may safely be deemed by persons dealing with him in good faith to be at least equal to the scope of the duties ordinarily conferred upon other agents of similar character." 3 Am.Jur. 2d Agency § 75, pp. 477–478. See our discussion and application of this doctrine per Titus, J., in Fielder v. Production Credit Ass'n, Mo.App., 429 S.W.2d 307, 313(7–11). Consult also Wynn v. McMahon Ford Co., Mo.App., 414 S.W.2d 330, 336–337.

submit its pleaded "affirmative defense," referred to "defendant's conduct in the delivery of possession of [plaintiffs'] Chevrolet automobile to Kyle Sillyman, doing business as Reliable Auto Body Shop for the purpose of doing the repair work on the Chevrolet automobile . . . ." This "affirmative defense," as pleaded in defendant's answer with particularity, was that "it was agreed between the plaintiffs and this defendant that the repair work on said automobile was to be done by Kyle Sillyman . . . ; that the plaintiffs did not deliver the automobile to this defendant at [its] place of business in Houston, Missouri; and that the plaintiffs did deliver the automobile to Clyde Ratterree . . . and directed the said Clyde Ratterree to deliver the automobile to the place of business of Kyle Sillyman . . . and to pick it up when the headliner was replaced and return it to the plaintiffs . . . " and "that the said Clyde Ratterree on April 13, 1968, delivered the said automobile to the said Kyle Sillyman as directed by the plaintiffs . . . ."

■ A plaintiff's verdict-directing instruction must require the jury to find all necessary elements of his case excepting only such as "it is unmistakably apparent . . . are conceded by both parties." Morris v. Continental Casualty Co., Mo. App., 423 S.W.2d 42, 47(3), and cases there collected, including White v. Citizens Ins. Co. of New Jersey, Mo.App., 355 S.W.2d 421, cited in instant plaintiffs' brief. Of course, there are situations involving the principal and agent relationship in which it becomes "unmistakably apparent" at some point prior to submission of the case that neither the fact of agency nor the authority of the agent with respect to the act or function under consideration remains in dispute. E. g., Young v. Frozen Foods Express, Inc., Mo.App., 444 S.W.2d 35(3), where defendant corporation admitted, in answers to interrogatories, the agency of the driver of a truck involved in a vehicular collision [1.c. 38], one of *defendant's* witnesses, the "co-pilot" of the truck, testified on direct examination to facts showing such agency [1.c. 38–39], and defendant's counsel clearly indicated in his opening statement and in his closing argument, both of which were included in the transcript, that agency was not a contested issue [1.c. 39–40]; and Terry v. Sweeney, Mo.App., 420 S.W.2d 368, upon which instant plaintiffs here rely, where it was held that a definition of "scope of employment," as used in plaintiff's verdict-directing instruction, was unnecessary because *"the evidence of both parties"* showed that the agency and authority of defendant's apartment building manager, as it related to the negligence charged against defendant landlord, was not a contested issue [1.c. 376(9)].

No such situation is presented here. Although Clyde's authority to accept delivery of plaintiffs' automobile for and on behalf of his corporate employer was a controverted issue on the face of the pleadings, instant plaintiffs did not avail themselves of any pre-trial discovery procedure to determine whether this would remain a controverted issue upon trial [Chandler v. New Moon Homes, Inc., supra, 418 S.W.2d at 135–136—contrast Young v. Frozen Foods Express, Inc., supra, 444 S.W.2d at 38], neither the opening statement nor the closing argument of defendant's counsel is preserved in the transcript on appeal, and nothing in the evidence showed that Clyde's scope of authority was not a contested issue. It may be granted that the hereinbefore-quoted clause lifted from defendant's instruction 4, by which defendant undertook to submit its pleaded "affirmative defense," deviated from and did not faithfully follow the language in which that defense was pleaded in the answer. But considered in context with the pleadings and the evidence, we cannot attribute to this clause in instruction 4 the drastic and conclusive import essential to acceptance of plaintiffs' present position, i. e., in effect that thereby it was made "un-

mistakably apparent" defendant conceded that the scope of Clyde's authority no longer remained in dispute. We remain of the opinion that a finding on this issue should have been required in plaintiffs' verdict directing instruction 2 and an appropriate definition of agency should have been given.

Since the foregoing is dispositive of this appeal and, upon retrial, additional evidence may be offered and the instructions may be redrafted to obviate other objections, we do not gratuitously reach for and needlessly rule additional questions. State ex rel. Sho-Me Power Corp. v. Hawkins, Mo.App., 337 S.W.2d 441, 444; Macy v. Day, Mo.App., 346 S.W.2d 555, 559(5).

The judgment for plaintiffs is set aside and the cause is remanded for retrial.

TITUS, P. J., and HOGAN, J., concur.