DR. A. H. DIEHR, RESPONDENT, v. ALBERT CAREY AND THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, A CORPORATION, APPELLANTS.—191 S. W. (2d) 296.

St. Louis Court of Appeals. Opinion filed December 18, 1945.

*George A. Hodgman* for appellants.

892

*Bartley & Bartley* for respondent.

ANDERSON, J.—This suit was instituted by plaintiff against three defendants, to recover the sum of $845 allegedly due plaintiff for professional services rendered by him. From a judgment in favor of plaintiff, two of said defendants, Albert Carey and The Fidelity and Casualty Company of New York, appealed. Defendant Farant Todd was let out of the case on a demurrer to the evidence.

Plaintiff, who is a physician and surgeon, is a resident of St. Louis County. Defendant Albert Carey is a resident of Franklin County. The Fidelity and Casualty Company of New York is a liability insurance company, organized under the laws of New York, and licensed to do business in the State of Missouri; it has agents in the city and county of St. Louis, and also in Franklin County. Defendant Farant Todd, an attorney in charge of claims for said company at its St. Louis office, is a resident of University City, Missouri, which is in St. Louis County.

On May 25, 1943, at Sullivan, Franklin county, Frederick E. Carey, the thirteen-year-old son of defendant Albert Carey, was struck and injured by an automobile truck, owned and operated by an assured protected by a liability insurance policy issued by defendant, The Fidelity & Casualty Company of New York. The boy was taken by a neighbor, Mr. McGruner, to the office of Dr. R. P. Royse at Sullivan, Missouri. Dr. Royse discovered that the boy was badly injured and suffering from shock, possible skull fracture, and fracture of the leg between the knee and hip. Shortly thereafter the father of the injured boy arrived at Dr. Royse's office, where he found his son on a cot, and an ambulance ready to take the boy to St. Louis. The father testified: "So he (Dr. Royse) said that Dr. Diehr will be the doctor, the bone doctor. He got on the phone then and called the doctor down here." Dr. Royse testified that he advised that the boy be removed to the Missouri Baptist Hospital in St. Louis, and put in the care of Dr. Diehr. This was done, and Carey at the time came to St. Louis and talked to Dr. Diehr. Defendant Carey testified that he understood that Dr. Diehr was to be their doctor. Dr. Diehr testified:

"Q. Now, Doctor, you were employed to look after this boy by Mr. Carey, the boy's father; isn't that true? A. Yes, sir.

"Q. And that arrangement was made when you first saw Mr. Carey at the hospital on May 25, 1943; isn't that right? A. I think that is right."

Dr. Diehr took charge of the case upon Frederick Carey's entry in the hospital, and continued in charge during all the time the boy remained there. About four days after his entry, Dr. Diehr performed an open operation on the leg. On June 10, 1943, Frederick was permitted to go home, but returned the latter part of August,

when he again was operated on by Dr. Diehr. This second operation was rendered necessary because the bone had bulged a little at the point of fracture. He remained in the hospital until sometime in November, during which time he was under the care of Dr. Diehr.

After Frederick had been taken to the hospital, the defendant Farant Todd talked to Dr. Royse. Dr. Royse's testimony as to what was said appears in the transcript as follows:

"Q. Now tell us what Mr. Todd said, please, sir? A. Well, he wanted to be sure that the boy got good and sufficient care. I wouldn't try to repeat his exact words or anything of that sort.

"Q. He wanted you and Dr. Diehr to see that the boy got the best of care? A. Yes, sir.

.    .    .    .    .

"Q. At the time that he was talking to you, had Dr. Diehr then been employed in the case? A. Yes, sir. Dr. Diehr had been on the case immediately after the boy arrived at the hospital.

"Q. Did Mr. Todd say anything to you with reference to paying for the services that he was asking you and Dr. Diehr to render to this boy? A. I do not remember him ever saying who would pay for the services, or anything like that. I do not remember him saying that he would pay it or that the company would pay for it, or that Mr. Carey would pay for it, or not. I do not remember of him saying anything about who would pay for the services.

"Q. He merely asked for the rendition of them? A. Yes, sir.

Dr. Diehr testified that the day of the accident, or a day or so later, after Frederick Carey was in the hospital, defendant Todd called upon him.

"Q. What did Mr. Todd say? A. He said he wanted this boy well taken care of. He said he realized the seriousness of this boy's injury, and if I needed consultants in the case I should get them in. He said to call in anyone I needed or that I thought might be of assistance, entirely leaving that to my judgment, and stating that when this case was settled they would take care of the bills. . . . He communicated with me on numerous occasions as to how the boy was getting along. . . . I think he called and asked that an itemized statement be sent. . . .

"Q. Now, Doctor, was there ever any written contract between you and any person for treating this boy? A. No, sir; there was not.

.    .    .    .    .

"A. . . . My recollection is that he (Todd) said that when this case is settled, if it is kept out of the hands of an attorney, that he would see that all bills were taken care of when they make the settlement. . . .

"Q. Did he say he would protect your bill? A. Yes, sir; he did."

Later Dr. Diehr sent defendant an itemized bill for $845, which was made out to Albert Carey, as debtor.

The evidence shows that the insurance company settled the boy's claim on February 14, 1944. On that date it drew a draft to the joint order of Albert Carey, as guardian and curator of his son, and Dr. Royse for $760.51, which included the services of Dr. Royse and the entire hospital bill. At the same time, defendant insurance company settled the parents' claims, based on their son's injuries, and issued its draft to the joint order of Albert Carey, Nellia Carey (mother), and plaintiff, in the sum of $500, showing in the draft that it was issued as a partial consideration for the parents' release. This draft was duly endorsed by Mr. and Mrs. Carey, and delivered to the plaintiff, but was never cashed. At the trial counsel for the insurance company stated that the draft would be paid, and when the case was submitted to the jury, the court instructed that the maximum recovery could not exceed $339, being the amount sued for less the amount of said draft, and less $6 charged on plaintiff's bill for visits to the hospital which admittedly were not made.

The plaintiff's petition alleged that:

"On the 25th day of May, 1943, and on or about the 15th day of June, 1943, he was employed in his professional capacity, as a physician and surgeon, by each one and all of the defendants herein, to render medical and surgical care to one Frederick E. Carey, a minor; that at the time of such employment by plaintiff, by each one and all of the aforesaid parties, no fixed or specified contract was made or price agreed upon as to the amount that should be paid to plaintiff by each one and all of the defendants for the services to be rendered said Frederick E. Carey, and the defendants and each of them thereby became and since have been obligated to pay plaintiff the fair and reasonable price for the service rendered and to be rendered by plaintiff to said Frederick E. Carey."

The petition then sets out the services rendered, the reasonable value as $845, demand and refusal, and it ends with a prayer for judgment in said sum of $845, with interest and costs of the action.

The record further shows that on this petition summonses were issued: For defendant Carey, directed to the sheriff of Franklin County; for defendant Todd, directed to the sheriff of the city of St. Louis; and for defendant insurance company, directed to the sheriff of Cole County. All three summonses were duly served and returned.

To the plaintiff's petition, defendant Albert Carey filed his answer, which contained a plea in abatement attacking the jurisdiction of the court and an answer to the merits.

In his plea in abatement, said defendant appeared specially. Said plea alleged that he was solely liable for the debt; that when he put his son in the professional care of plaintiff, neither of the co-defendants

were present; and neither had had anything to do with the contract between him and plaintiff; that there never was any contract, and especially there was no contract in writing, whereby either of his co-defendants agreed to answer for any debt of his to plaintiff, or any joint contract between defendants and plaintiff for the rendering of professional service to defendant's son; that the allegation of a joint contract in plaintiff's petition was false, colorable only, and legallly fraudulent, and made for the purpose of compelling him to defend the suit in the city of St. Louis and not in the county where he resided; that he was at all times mentioned in the petition a resident of Franklin county; that plaintiff was a resident of St. Louis county; that the defendant was not found in the city of St. Louis, and that the pretended service of summons upon him was null and void; that defendant Todd was a resident of St. Louis county; that defendant The Fidelity and Casualty Company of New York was a corporation existing under the laws of New York, licensed to do business in Missouri, and engaged in business in Franklin County, and in the city and county of St. Louis, and that neither co-defendant was a proper or necessary party to the cause of action of plaintiff against him. The prayer of said plea asked that the pretended service upon him be quashed, and that the action abate and be held for naught.

In the plea to the merits, said defendant admitted that be became legally bound upon his own contract to pay plaintiff the reasonable value of his services, and that no other person had agreed to become legally liable for same; that plaintiff's charge of $845 was grossly excessive; that he had tendered plaintiff the sum of $500, in payment for his services, in the form of a draft, which was a bar to plaintiff's demand. The answer also contained a general denial.

Defendant insurance company filed a like plea in abatement, together with an answer to the merits, which answer contained a general denial and a plea "that there was never, at any time, any consideration passing between plaintiff and this defendant as a consideration for any promise by this defendant to pay plaintiff, as set forth in said petition, and, further answering, this defendant says that its co-defendant Albert Carey became legally indebted to plaintiff for the reasonable value of professional services rendered and to be rendered said Albert Carey's son, Frederick E. Carey, but that this defendant never agreed in writing to be bound for the debt of another, to-wit: the said co-defendant Albert Carey, and, accordingly, pleads the Statute of Frauds as a bar to plaintiff's asserted cause of action."

Defendant Todd filed a like plea and answer.

Thereafter plaintiff filed an amended petition. The only difference between it and the original petition was that the amended petition contained an allegation that plaintiff's cause of action against the defendant insurance company accrued within the city of St. Louis.

To this amended petition defendants re-filed their pleas in abatement and answers to the merits.

Defendants then filed a motion in said cause requesting a separate trial on the issues raised by their pleas in abatement. The motion was by the court overruled. At the conclusion of the testimony each defendant filed a motion requesting that said cause be dismissed for lack of jurisdiction. These motions were overruled, and the cause was submitted to the jury, who found a verdict against the defendant insurance company and defendant Albert Carey in the sum of $339. From this judgment said defendants have appealed.

Appellant surety company contends that its requested instruction in the nature of a demurrer to the evidence should have been sustained because its agreement to pay for the services rendered was a promise to answer for the debt of another and was not in writing, and hence unenforceable under the Statute of Frauds. The point is well taken.

The evidence is clear that at the time Todd, acting for the insurance company, made the alleged promise, plaintiff already was employed to render said services by the father of Frederick Carey. The evidence further shows that plaintiff continued to look to the father for his pay, and brought this suit against him. Therefore, the insurance company, under the ruling in Swarens v. Pfnisel, 324 Mo. 1245, 26 S. W. (2d) 951, is merely a surety or guarantor, and its promise comes within the Statute of Frauds.

It is suggested that since Todd was acting in the interest of his company, the alleged agreement which he made is an original contract, and therefore the Statute of Frauds does not apply. In our view, the motive which Todd had in making the promise is not the vital element determinative of the applicability of the statute. In Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576, 67 A. L. R. 489, the tests to be applied to determine whether an agreement is an original undertaking, and not within the Statute of Frauds, are laid down as follows: (1) Credit must be given by the promisee to the promisor alone; and (2) the leading or main purpose of the promisor in making the promise must be to gain some advantage for himself, rather than to become the mere guarantor or surety of another's debt, and the promise must be supported by a consideration beneficial to the promisor. In the case at bar plaintiff did not give credit solely to the defendant insurance company, nor was there any consideration for said promise beneficial to said defendant. Therefore, under the rule announced in the Wahl case, *supra,* the promise of Todd to pay the debt for which defendant Carey was primarily liable was in law a collateral undertaking to answer for the debt of another and unenforceable under the Statute of Frauds. [See also: Moore v. Mc-Haney, 191 Mo. App. 686, 178 S. W. 258; Martin v. Harrington, 174 Mo. App. 707, 161 S. W. 275; Waggoner v. Davidson, 189 Mo. App.

345, 175 S. W. 232; and First National Bank of Dexter v. Crutcher (Mo. App.), 15 S. W. (2d) 888.]

The trial court should have given the requested instruction.

Appellant Carey contends that the court erred in holding that it had jurisdiction over him, and in refusing, for that reason, to sustain his motion to dismiss. In support of this contention, said appellant urges that a plaintiff's right to maintain an action in the county of the residence of one defendant against a co-defendant having a residence and served with process in some other county depends on the joint liability of defendants to plaintiff.

Venue, in actions where a corporation is sued with another, is determined by Section 871, R. S. Missouri 1939, Missouri Revised Statutes Annotated, sec. 871. [State ex rel. Henning v. Williams, 345 Mo. 22, 131 S. W. (2d) 561.] The second clause of said section provides that "when there are several defendants, and they reside in different counties, the suit may be brought in any such county." A foreign corporation licensed to do business in the State is a resident of any county where it maintains an office .or agent for the transaction of its usual and customary business. [State ex rel. Henning v. Williams, *supra.*] The record in the case at bar discloses that defendant insurance company maintained such an office in the city of St. Louis.

In construing Section 871, *supra,* the courts of this State have held that where the plaintiff's petition fails to state facts sufficient to constitute a cause of action against the resident defendant, the trial court acquires no jurisdiction over the nonresident defendant by virtue of the service of a writ of summons upon him directed to the sheriff of the county of his residence. [State ex rel. Dutcher v. Shelton, 249 Mo. 660, 156 S. W. 955; Liechty v. Kansas City Bridge Co. (Mo.), 162 S. W. (2d) 275; Lieffring v. Birt (Mo. App.), 154 S. W. (2d) 597; Winter v. Commercial Bank (Mo. App.), 238 S. W. 833; and State ex rel. Becker v. Koerner (Mo. App.), 181 S. W. (2d) 1004.]

In the case at bar the petition did state a cause of action against the resident defendant, but at the trial there was no proof of the cause of action alleged, and there was no proof that plaintiff had any action against the resident defendant. The petition charged a joint contract of hiring by the defendants. The proof showed an original contract of hiring by defendant Carey, and a subsequent promise by the defendant insurance company to pay plaintiff for his services, for the breach of which no action could be brought. Section 3354, Revised Statutes 1939, Section 3354, Missouri Revised Statutes Annotated, provides: *"No action shall be brought* . . . to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith,

. . . " (Underscoring ours.) It would be a very dangerous doctrine, indeed, and one utterly destructive of the valuable rights conferred upon litigants by Section 871, Revised Statutes Missouri 1939, Missouri Revised Statutes Annotated, section 871, if this court should countenance a. practice whereby a plaintiff could, by stating a paper case against the resident defendant, force a non-resident to submit to the jurisdiction of the court, when in truth and in fact the plaintiff had no cause of action against the resident defendant, either because no factual basis could exist to support an honest belief on plaintiff's part that he had a cause of action against the resident defendant, or that upon the conceded facts, as in the case at bar, no action could be brought against him. When the issue is raised by a proper plea, as was done in the instant case, the court should look behind the mere ingenuity of pleading, and scrutinize the facts to ascertain the propriety of the joinder of the defendants.

The court will not require a showing that the plaintiff must ultimately succeed in the action. If at the time plaintiff files his petition he has evidence of witnesses who will sustain the allegations of his petition against the resident defendant, the fact that circumstances may deprive him of his evidence at the trial will not justify a dismissal as to the non-resident defendant, but if from the existing state of the law and the facts it is clear that the resident defendant can be liable to the plaintiff on no reasonable legal ground, and that plaintiff knew or must be presumed to have known such to be the case, then the joinder as a co-defendant of such person cannot be justified, and is explainable only as having been pretensively made to bring into the jurisdiction one who could not otherwise have been subjected to the court's jurisdiction.

The evidence in this case unmistakably shows that plaintiff never in fact had a claim against defendant insurance company for which an action could be brought. In the case of State ex rel. Dutcher v. Shelton, 249 Mo. 660, loc. cit. 684, 156 S. W. 955, loc. cit. 961, our Supreme Court has laid down the rule in the following language:

"Without discussing these statutes in detail, it will be seen by reading them, that a suit must be based upon a cause of action; that said cause of action must be stated in the petition; that said cause of action must exist against one or more persons, who are liable thereon, and that the suit can only be legally brought against the person or persons so liable. Consequently it must follow therefrom, that if a party is sued alone, or jointly with another, against whom no cause of action exists, then that party was illegally sued, and, if illegally sued, then of course the service had upon him was illegal also, and should be so held when that fact is shown to the court, even though the petition should state a good cause of action against him, and *a fortiori* where the petition upon its face fails to state such a cause against

him. This court has so held repeatedly. [State ex rel. v. Bradley, 193 Mo. 33, 91 S. W. 483; Graham v. Ringo, 67 Mo. 324.]

"The only difference that exists between the case where the petition states a cause of action which has no existence in point of fact, and the one where it appears upon the face of the petition that no cause exists, is one of practice. In the former, evidence *aliunde* must be resorted to to show that no such cause exists, while in the latter, it appears upon the face of the record and may be raised by a demurrer or other appropriate proceeding." ·

In our opinion the trial court should have sustained the plea in abatement filed by defendant Carey.

The judgment against the Fidelity and Casualty Company of New York is reversed. The judgment against defendant Carey is reversed and the cause remanded with directions to the trial court to dismiss said cause as to defendant Albert Carey.

*McCullen, J.,* concurs; *Hughes, P. J.,* not sitting.