**GALEMORE MOTOR COMPANY, INC.,**
Plaintiff-Respondent,

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a corpo-
ration, Defendant-Appellant.**

No. 9245.

Missouri Court of Appeals,
Springfield District.

Aug. 14, 1974.

Albert C. Lowes, Buerkle, Buerkle & Lowes, Jackson, for defendant-appellant.

Weber Gilmore, Sikeston, for plaintiff-respondent.

STONE, Judge.

In this "Action on Account," plaintiff Galemore Motors, Inc., initially sought judgment against defendant State Farm Mutual Automobile Insurance Company (State Farm) or, "in the alternative," against defendant Jerry Householder in the sum of $750 for the alleged rental of a 1969 Plymouth automobile for fifty days at $15 per day. Upon trial by jury, defendant State Farm elected to stand on its separate motion for a directed verdict at the close of plaintiff's case. After defendant Householder's similar motion for a directed verdict at that stage of the case had been denied, he testified on his own behalf; but, at the close of all the evidence, plaintiff dismissed as to him. From the judgment for $750 thereafter entered upon a unanimous jury verdict in favor of plaintiff, defendant State Farm appeals.

This suit is an outgrowth of a collision "on the highway coming through Jackson," Missouri, on January 26, 1970, when a northbound pickup driven by Edwin Strack, a State Farm insured, made a left-hand turn in front of a southbound 1969 Plymouth automobile owned and being driven by Jack Ivie, a deputy sheriff of Mississippi County, resulting in extensive

damage to the Ivie automobile. On the afternoon of January 29, 1970, Householder talked with Ivie in the sheriff's office at Charleston, Missouri, identified himself as representing State Farm, and in the course of subsequent conversation said that "his insured had admitted fault and he would like to see that [Ivie] had a car to drive." When Ivie responded that he had borrowed a 1969 Plymouth from Mr. L. E. Galemore, plaintiff's controlling officer and shareholder, for use "until I could make some arrangements," Householder inquired whether it was "a good car" and "satisfactory"; and, upon being assured by Ivie that it was, Householder proposed that they "go out and see Mr. Galemore," which they proceeded to do.

The principal issue of fact, i.e., as to whether Ivie or defendant State Farm then rented the 1969 Plymouth, is best reflected in the following testimonial excerpts. *Ivie's account* was that Householder "asked [Galemore] how much he would charge for the car that I was using. Mr. Galemore told [Householder] he would have to have $15 a day . . . . Householder said that he could rent a car for $13 a day plus a cent or two mileage. L. E. [Galemore] told him that would probably run over [$15] a day as many miles as I drove, and I told them I didn't want to get in the conversation any more than possible . . . that they could make arrangements, anything they did was satisfactory with me, so Mr. Householder . . . said, 'well, you just go ahead and drive this car then and we will take care of it.'" To the specific query whether he had "any agreement with Mr. Galemore or was the agreement between Mr. Galemore and Mr. Householder," Ivie insisted that "it was strictly between Mr. Galemore and Mr. Householder. I made that plain. I didn't want to rent the car myself. I wanted them to make the arrangements and make the deal, and whatever they did was all right with me." *L. E. Galemore's testimony* to the same effect was that

Householder "said they were prepared to rent [Ivie] a car, and . . . we got down to the price on the car, and I told Mr. Householder I needed $15 a day. He said he could rent a Hertz for $13 plus mileage. I told him, 'He [Ivie] will drive four or five thousand miles during the time the car is being repaired and so it would really be cheaper, the $15,' so that is the figure we agreed on." Galemore further testified that $15 per day was the fair and reasonable rental price for that automobile in Charleston.

*Householder's version* was that, after Ivie had introduced them, Galemore "asked me what we would pay for renting a vehicle and I told him under our own policy for one of our own insureds . . . it is $8 a day and he said, well, he would have to have $15 a day, and I think I said something to the effect, 'Hell, you can rent Hertz rent-a-car for $13 a day.' . . . When Mr. Ivie asked me again, I told him to go ahead and rent a car and we will be responsible for your monetary loss." To the following inquiry whether he had ever told Galemore that he would rent this or any other vehicle for Ivie, Householder responded with a blunt "no."

The damage to the Ivie automobile was so extensive, as indicated by the two repair estimates, i.e., instant plaintiff's estimate of $1,868 and Kersey's estimate of $1,767, that Householder deemed it prudent to solicit and obtain four competitive salvage bids for the damaged Ivie automobile before concluding on February 16, twenty-five days after the accident, that the Ivie automobile "was repairable" and authorizing Kersey to order parts and proceed.

Defendant State Farm's counsel present five elaborate points with a diffuse argument on each, which cumulatively, although perhaps not designed so to do, nevertheless would unnecessarily complicate a relatively uncomplicated case. Perhaps some of the chaff may be winnowed out of

this heap in the course of careful consideration of defendant's *first point* that:

"State Farm's motion for directed verdict filed at the close of plaintiff's case should have been sustained because: (a) Plaintiff did not prove the normal elements of an action on account as alleged in its petition in paragraph 3 and as stated in paragraph (1)(b) and (c) of defendant's motion for directed verdict filed at the close of plaintiff's case. (b) Plaintiff did not prove that any act or omission allegedly accomplished by one Jerry Householder was accomplished for and on behalf of his employer and principal, State Farm, and especially the plaintiff did not prove that Jerry Householder had the authority, express or implied, to make any type of alleged rental agreement between the defendant and a third-party claimant as plaintiff was in this instance, as alleged in paragraph 3 of Count I of plaintiff's petition."

■ Preliminarily, we agree with defendant State Farm's position (for which its counsel cites no supporting authority) that, since it elected to stand on its motion for a directed verdict at the close of plaintiff's case, we may consider only the proceedings and evidence prior to that time in ruling the submissibility of the case against State Farm. Gibson v. Newhouse, 402 S. W.2d 324, 326–327(2) (Mo.1966); Murphy v. Deksnis, 476 S.W.2d 150, 152(5) (Mo. App.1972); Lathrop v. Rippee, 432 S.W.2d 227, 229(1) (Mo.1968).

As disclosed and elucidated in the argument section of its brief, State Farm's assertion of nonsubmissibility in the above-quoted *first point* rests upon the twin assertions (a) that plaintiff did not prove the elements of its pleaded cause of action and by its verdict-directing instruction 2 submitted its case on a different theory, and (b) that Householder's status as "a duly authorized agent" of State Farm was "an abandoned issue . . . because it

wasn't instructed on" and "alternatively" that plaintiff did not prove Householder had either express or implied authority to rent an automobile for use by a claimant such as Ivie.

■ *Of (a)*. Defendant State Farm's counsel rest this argument on the fact that *it was averred in plaintiff's petition* that "[o]n or about the 29th day of January, 1970, the *defendant*, acting by and through its duly authorized agent and representative, Jerry Householder . . . *did rent from the plaintiff*" a certain automobile for $15 per day *and* that "thereafter *defendant did use plaintiff's automobile* for a total of fifty days thus thereby becoming indebted to the plaintiff in the sum of $750," whereas *plaintiff's verdict-directing instruction 2 required findings* that "First, at defendant's request plaintiff furnished to Jack F. Ivie a certain automobile between the 26th day of January, 1970 and March 17, 1970 and Second, plaintiff charged a total of $750 for such goods, and Third, plaintiff's charges were reasonable." (All emphasis herein is ours.)

However, defendant was in no wise prejudiced by, and is in no position to complain about, the noted differences between the averments of plaintiff's petition and the issues as submitted by plaintiff's instruction 2. For meticulous examination of the transcript establishes that the above-quoted findings faithfully and precisely reflect factual issues presented and supported by the testimony of plaintiff's witnesses Ivie and L. E. Galemore, and that[e] *all of such testimony was received without a single objection by State Farm's counsel*. In these circumstances, the petition is treated as having been amended to conform to the evidence. Rule 55.33(b) (formerly Rule 55.54); § 509.500; Harris v. Goggins, 374 S.W.2d 6, 12(4–6) (Mo. banc 1963); Lock v. Bennartz, 470 S.W.2d 801, 802(1) (Mo.1971); Searcy v. Neal, 509 S.W.2d 755, 759–760(1, 2) (Mo.App. 1974); Stoeppelman v. Hays-Fendler

Const. Co., 437 S.W.2d 143, 150(16) (Mo. App.1968).[1]

■ *Of (b).* The *primary* argument under this bifurcation of the first point, to wit, that Householder's status as "a duly authorized agent" of State Farm was "an abandoned issue . . . because it wasn't instructed on," is directed to the *fact of agency*, i.e., the existence of the relationship of principal and agent. However, the transcript on appeal clearly establishes that Householder's status as an adjuster for State Farm was admitted and confirmed by State Farm's counsel during his opening statement to the jury in the course of which he identified "Jerry T. Householder" as "our adjuster" and, having assured the jury there was "no dispute" about the fact that State Farm's insured was at fault and therefore "we owe [plaintiff] Mr. Ivie," then declared that "we [State Farm] through Mr. Householder sought to settle it." Thus, the *fact of agency*, as distinguished from the *scope of agency* (i.e., whether or not Householder's alleged rental of an automobile for Ivie's use was within the scope and course of Householder's employment), was admitted and confirmed at the outset of the trial [cf. McCarthy v. Wulff, 452 S.W.2d 164, 167(1, 2) (Mo.1970)] and was not thereafter contested or disputed at any stage of the trial. With the *fact of agency* thus admitted, it would have been a work of supererogation to have submitted that fact in an instruction as if it were a contested issue and to have required that it be found by the jury. Young v. Frozen Foods Express, Inc., 444 S.W.2d 35, 39-40(3-5) (Mo.App.1969). State Farm's primary argument under this bifurcation of the first point must be rejected.

State Farm's *"alternative"* argument under this bifurcation, to wit, that plaintiff did not prove Householder had either express or implied authority to rent an automobile for Ivie's use, is directed to the *scope of agency*, i.e., whether or not Householder's alleged rental of an automobile for Ivie's use was within the scope and course of Householder's employment. In ruling this argument under the first point, we are concerned only with the *submissibility* of the issue as to Householder's scope of agency. Whether that issue *actually was submitted* is an entirely different question presented by another point in State Farm's brief, of which more anon. In considering submissibility, we start with the admitted fact that Householder was State Farm's adjuster and that State Farm "through Mr. Householder sought to settle" Ivie's claim. Ivie having suffered no personal injury, his claim was for damages resulting from the wrecking of his 1969 Plymouth automobile; and loss of use of that automobile in the daily performance of his duties as a deputy sheriff as well as for personal purposes was an important element necessarily and properly to be considered in determining the extent of his total loss and settling his claim. Weller v. Hayes Truck Lines, 355 Mo. 695, 705, 197 S.W.2d 657, 663(14) (banc 1946); McCauley v. Stone, 315 S.W.2d 476, 481 (Mo.App.1958). Thus, in endeavoring to control and settle the Ivie claim, it was both appropriate and expedient for Householder to evince interest, as he did, in the loss-of-use element which was particularly important in this instance by reason of Ivie's use of and need for an automobile in his employment.

■ There is no evidence in the record before us either affirming or negating the *actual* authority of Householder as a State Farm adjuster to contract with plaintiff for a substitute vehicle to be used by claimant Ivie until his automobile damaged as a result of negligence on the part of a State Farm insured could be repaired. However, it has long been recognized and settled that it is the business of an adjuster to ascertain the loss and agree with the as-

1. All statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

sured on a settlement, and that, with respect to settlement of a loss or claim, an adjuster's acts within the *actual or apparent* scope of his authority, being the acts of the company, are binding upon it. Curtis v. Indemnity Co. of America, 327 Mo. 350, 367, 37 S.W.2d 616, 624(5) (1931); Weinberg v. Globe Indemnity Co., 355 S.W.2d 341, 345(1) (Mo.App.1962); Deig v. General Insurance Co. of America, 301 S.W.2d 409, 411 (Mo.App.1957); 8 Blashfield, Automobile Law and Practice § 332.-1, p. 166 (3rd Ed.1966); 16A Appleman, Insurance Law and Practice § 9369, l.c. 844 (1968). As we had occasion to point out per Titus, J., in Fielder v. Production Credit Association, 429 S.W.2d 307, 313(8) (Mo.App.1968), "[t]he appearance of power with which the agent is cloaked by the principal 'is the equivalent of expressly conferred power, insofar as third persons are concerned' (Wynn v. McMahon Ford Co., Mo.App., 414 S.W.2d 330, 336), and the exercise of such power by the agent in dealing with third persons is binding upon the principal even though it exceeds the actual power conferred. Daugherty v. Spuck Iron § Foundry Co., Mo.App., 175 S.W.2d 45, 49(2); 3 Am.Jur.2d, Agency, § 263, p. 628."

■■ The doctrine of *apparent* authority "cannot be stated in terms of specific fact situations for its application may be as varied as the activities of man" [Wynn v. McMahon Ford Co., supra, 414 S.W.2d at 336]; but it has been well-articulated as " 'the general rule that the principal is bound by the acts of [its] agent when [it] has placed the agent in such a position that persons of ordinary prudence, reasonably conversant with business usages and customs, are thereby led to believe and assume that the agent is possessed of certain authority and that they may deal with him in reliance on such assumption. No one can question the principle of law that such acts and contracts of an agent as are within the apparent scope of the authority conferred on him, although no express or direct authority to do such acts or to make such

contracts has been conferred, are also binding upon the principal.' Werner v. Welsh Co., Mo.App., 247 S.W.2d 311, 313." Wynn v. McMahon Ford Co., supra, 414 S.W.2d at 336 (10, 11). As we have noted, this general rule should be and is applicable with respect to the acts of an insurance adjuster within the apparent scope of his authority. 45 C.J.S. Insurance § 1102, p. 1338. Without resifting the facts in the case at bar, suffice it to record at this point our firm conclusion that the issue as to Householder's *scope of agency*, i.e., whether his alleged rental of an automobile for Ivie's use was within the scope and course of his employment, was submissible. Accordingly, State·Farm's "alternative" argument under bifurcation (b) of the first point must be rejected.

State Farm's *second point* is a long, involved statement which, in essence, complains that its motion for a directed verdict at the close of plaintiff's case should have been sustained because "the Statute of Frauds [§ 432.010] appeared in the case as a matter of law" in that "what was really urged in this case . . . was a claimed promise by one party, i.e., State Farm, to pay for the debts or obligations of another party, to-wit, Jack Ivie, and there is nothing in writing setting forth those terms as the law requires." Counsel for State Farm argue here that, since Galemore had furnished an automobile to Ivie before Householder came to Charleston, it "seems obvious" that "some type of legal contract had been entered into by and between [plaintiff] Galemore and Ivie." However, all of the evidence was to the contrary, Ivie having testified that "Mr. Galemore loaned me that car because I was his customer until I could make arrangements for a car" and Galemore having confirmed that this was in accordance with his practice in accommodating his customers.

■ In resolving an issue as to *whether or not an oral agreement or promise is within the statute of frauds*, the basic inquiry is whether such agreement or

promise is original or collateral. If original, it is enforceable; if collateral, it is not enforceable. Carvitto v. Ryle, 495 S.W.2d 109, 114(9) (Mo.App.1973); 37 C.J.S. Frauds, Statute of § 16, p. 522. And the agreement or promise is an original undertaking, and thus not within the statute of frauds, "[i]f the credit is given by the promisee to the promisor alone" and "the leading or main purpose of the promisor is to gain some advantage for himself, or to promote some interest or purpose of his own, rather than to become the mere guarantor or surety of another's debt, and the promise is made upon a consideration beneficial to the promisor." Wahl v. Cunningham, 320 Mo. 57, 70–71, 6 S.W.2d 576, 581(4), 67 A.L.R. 489 (banc 1928). Accord, Carvitto v. Ryle, supra, 495 S.W.2d at 114; Diehr v. Carey, 238 Mo.App. 889, 897, 191 S.W.2d 296, 300(1) (1945). On the hereinbefore-detailed evidence adduced in the case at bar, we are satisfied that it may not be held that State Farm's motion for a directed verdict at the close of plaintiff's case should have been sustained because "the Statute of Frauds appeared in the case as a matter of law." State Farm's second point is denied.

State Farm's *third point* assigns error in the giving of plaintiff's verdict-directing instruction 2 because (a) "it was at radical variance with plaintiff's pleadings" and (b) it omitted any reference to agency. *Argument (a)* under this point is a replay of argument (a) under the first point, emphasizing and resting upon the hereinbefore-noted differences between the averments of plaintiff's petition and the issues as submitted in instruction 2. However, this instruction required findings permissible under and supported by plaintiff's evidence, all of which was received without objection. Hence, we regard the petition as having been amended to conform to the evidence, and instruction 2 is not vulnerable for the first reason urged under this point.

■ *Argument (b)* attacks instruction 2 because it omitted any reference to agency. In considering this argument, we again note that instruction 2 (properly paragraphed and identified as MAI 26.03) indeed did direct a verdict for plaintiff upon three findings, to wit, "First, at defendant's request plaintiff furnished to Jack F. Ivie a certain automobile between the 26th day of January, 1970 and March 17, 1970 and Second, plaintiff charged a total of $750 for such goods and Third, plaintiff's charges 'were reasonable," with no reference to either the fact of Householder's agency or the scope and course of his employment. A plaintiff's verdict-directing instruction must require the jury to find all necessary elements of its case excepting only such as "it is unmistakably apparent . . . are conceded by both parties." Morris v. Continental Casualty Co., 423 S.W.2d 42, 47(3) (Mo.App.1967), and cases there cited. Of course, there are situations involving that relationship in which it becomes "unmistakably apparent" at some point prior to submission of the case that neither the fact of agency nor the authority of the agent with respect to the act or function under consideration remains in dispute. E.g., Young v. Frozen Foods Express, Inc., supra, 444 S.W.2d at 35(3), where in answers to interrogatories defendant corporation admitted the agency of the driver of a truck involved in a vehicular collision [1.c. 38], one of *defendant's* witnesses, the "co-pilot" of the truck, testified on direct examination to facts showing such agency [1.c. 38–39], and defendant's counsel clearly indicated in his opening statement and in his closing argument that agency was not a contested issue [1.c. 39–40]; and Terry v. Sweeney, 420 S.W.2d 368 (Mo.App.1967), where it was held that a definition of "scope of employment," as used in plaintiff's verdict-directing instruction, was unnecessary because *"the evidence of both parties"* showed that the agency and authority of defendant's apartment building manager, as it related to the negligence charged against defendant landlord, was not a contested issue [1.c. 376(9)].

No such situation is presented here. Although the question whether Householder was "acting within the scope and course of his employment" (as alleged in paragraph 3 of Count I of plaintiff's petition) when he allegedly rented an automobile for use by Ivie was a controverted issue on the face of the pleadings [Peak v. W. T. Grant Co., 409 S.W.2d 58, 59–60 (Mo. banc 1966), 31 A.L.R.3d 697], plaintiff, upon whom the burden of proof indubitably rested as to this issue, did not avail itself of any pre-trial discovery procedure to determine whether this would remain a controverted issue upon trial. Chandler v. New Moon Homes, Inc., 418 S.W.2d 130, 135–136(4, 6) (Mo. banc 1967)—contrast Young v. Frozen Foods Express, Inc., supra, 444 S.W.2d at 38. That at the close of the evidence this question was still a controverted issue, and then was recognized as such by plaintiff's counsel, is evidenced by the fact that counsel offered and the court gave plaintiff's definitive instruction 3 (properly paragraphed and identified as MAI 13.05) which declared that "Acts were within the *scope and course of employment*' as that term is used in this instruction if: 1. They were a part of the work Mr. Householder was employed to perform, and 2. They were done by Mr. Householder to serve the business interests of State Farm Mutual Automobile Insurance Company." But this *recognition* of the issue by the giving of instruction 3 did not constitute *submission* of it. For instruction 3 did nothing more than define "scope and course of employment," a term not found in any other instruction, and thus was a meaningless exercise in *futility*. The issue as to whether or not Householder was acting within the scope and course of his employment when he allegedly rented an automobile for use by Ivie should have been submitted in plaintiff's verdict-directing instruction in a manner compatible with that outlined in MAI 18.01, followed by MAI 13.05 defining "scope and course of employment" as that term is used *"in these instructions."* Ratterree v. General Motors Corp., 460 S.W.2d 309, 313 (Mo.App.1970). For illustrative instructions outlining the proper submission of an agency issue in a *tort* action, see Nos. 4 and 10 at pages 399 and 402 under MAI 35.04 (2d Ed. 1969).

Since the foregoing is dispositive of this appeal, we do not gratuitously reach for and needlessly rule additional questions. State ex rel. Sho-Me Power Corp. v. Hawkins, 337 S.W.2d 441, 444 (Mo.App. 1960); Ratterree v. General Motors Corp., supra, 460 S.W.2d at 315. The judgment for plaintiff is set aside and the cause is remanded for retrial.

HOGAN, C. J., and TITUS and BILLINGS, JJ., concur.