**E. F. HUTTON & COMPANY, INC.,
Appellee/Cross-Appellant,**

v.

**Melford BERNS, and Lenny Garcia,
Appellants/Cross-Appellees.**

**Nos. 81–1426, 81–1470.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 8, 1982.

Decided June 30, 1982.

Rehearing Denied Aug. 4, 1982.

Irl B. Baris, St. Louis, Mo., for appellants/cross-appellees Berns and Garcia.

Jerome F. Raskas, John C. Garavaglia, St. Louis, Mo., for appellee/cross-appellant E. F. Hutton & Co., Inc.

Before LAY, Chief Judge, ROSS and McMILLIAN, Circuit Judges.

ROSS, Circuit Judge.

*Background*

For purposes of this appeal only a general review of the events giving rise to this litigation is necessary. Appellants Melford Berns and Lenny Garcia were partners in a business called West County Photo Supply, Inc. During the fall of 1979 the appellants and three other individuals made a series of purchases of Victoria Station stock from the appellee, E. F. Hutton, Inc. (Hutton), through one of Hutton's account executives, Bruce O'Dell. Appellants claim the purchases resulted from conversations between the appellants and O'Dell concerning the advisability of acquiring Victoria Station stock at that time. According to the appellants, O'Dell continually advised them from about mid-September 1979 to late October 1979 that a takeover of Victoria Station was imminent and that the stock's value would increase substantially in a short period of time. Appellants maintain that they were induced to purchase the stock by O'Dell's misrepresentations that he had inside information that Victoria Station was going to be acquired by another company. However, appellee contends that the information concerning Victoria Station's stock was only a rumor which was public knowledge, and that O'Dell clearly advised appellants that the information was merely rumor.

All of the purchases of Victoria Station stock by the appellants were made on margin accounts, i.e., fifty percent payment required within five business days. According to the appellants, O'Dell assured them that because of the imminence of the Victoria Station deal, they would not have to pay for their purchases until after the stock's value substantially increased. However, by October 10, 1979, the first settlement date on Garcia's margin account, the Victoria Station merger or acquisition had not oc-

curred and Garcia was required to tender $8,500 to Hutton. By Garcia's next settlement date, October 17, 1979, the Victoria Station transaction had not occurred, and Garcia was required to tender $8,175 to cover his additional margin purchases. Because Garcia apparently did not have sufficient funds to meet his obligations, Berns consented to allow Garcia to borrow the money to cover those purchases from West Coast Photo Supply.

On October 17, 1979, when Garcia tendered payment to Hutton for his previous stock purchases, a meeting between O'Dell, Garcia, Berns, and another Hutton account executive occurred during which additional purchases of Victoria Station stock by Garcia were discussed. According to O'Dell, during this conversation Berns stated that he would guaranty Garcia's account, but a written guaranty was not signed by Berns. Berns denied making even an oral guaranty. On October 19, 1979, Garcia purchased an additional 8,000 shares of Victoria Station stock on the margin for $132,000 with an October 26 settlement date. On October 22, 1979, Garcia purchased another 5,000 shares on the margin for $80,000. Additional margin account purchases of Victoria Station stock from Hutton were made by Berns and his acquaintances other than Garcia up until October 25, 1979.

Friday, October 26, 1979, was purportedly the date that the Victoria Station transaction was to occur. On that day Garcia owed Hutton $66,000 on his margin account, but when the Victoria Station transaction was not announced, Berns and Garcia balked at making any further payment on Garcia's account. Late that day Berns, Garcia, O'Dell, and another Hutton account executive spoke in a conference telephone call during which Garcia and Berns allegedly detailed their accusations against O'Dell for his misrepresentations concerning the Victoria Station transaction.

Apparently on October 26 or 27, 1979, an article appeared in *Business Week* in which rumors of any acquisition or merger were denied by Victoria Station and the other company involved. On October 29 Berns contacted a co-manager at Hutton, Don Matthewson, to complain about Garcia's situation, and a meeting was set up during which Berns and Garcia asserted the alleged misrepresentations by O'Dell, refused to complete full payment of their accounts because of the misrepresentations, and sought a return of their money. Apparently, the issues of the past due accounts and O'Dell's misrepresentations were not resolved at that meeting. Because the price of Victoria Station stock had dropped, additional margin deposits were required on Berns' and Garcia's accounts, and Hutton sold Garcia out of the stock at a substantial loss to cover a part of those requirements.[1]

In a diversity action brought under 28 U.S.C. § 1332 (1976), on November 21, 1979, the plaintiff-appellee Hutton filed an eighteen count complaint against defendants-appellants Berns, Garcia, and three other individuals who had been involved in the purchases of Victoria Station stock, alleging breach of contract by failing to pay for stock purchases, breach of a guaranty by Berns to pay for Garcia's stock purchases, violations of section 10(b) of the Securities Exchange Act of 1934[2] and Rule 10b–5 promulgated under that Act,[3] common law fraud and misrepresentation, conspiracy to violate securities laws, and conspiracy to defraud. Berns and Garcia filed separate counterclaims against Hutton alleging violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, and common law fraud.

After a lengthy trial before a jury, the jury returned a verdict against Garcia on

1. Apparently Berns had sufficient resources to cover the additional margin requirements, and directed the liquidation of his Victoria Station holdings over a period of months. Count I of the complaint filed against Berns for failure to pay the balance due on his account was not submitted to the jury because evidence at trial showed that after Hutton's liquidation of Bern's holdings a balance of $81,228 was owed to Berns.

2. 15 U.S.C. 78j(b) (1976).

3. 17 C.F.R. 240.10b–5 (1981).

count II of the complaint for $68,000 (breach of contract in failing to pay for stock) and against Berns on count VI for $0 (breach of guaranty). Verdicts were returned in favor of Berns and Garcia on all other counts in which they were named, but the jury rejected all counterclaims against Hutton brought by the defendants. Judgments were entered by the court in accordance with the jury verdicts on February 12, 1981.[4]

Berns and Garcia primarily appeal on the grounds that the defense of *in pari delicto* was incorrectly given to the jury in relation to their counterclaims against Hutton. In addition, appellant Berns contends that the trial court erred in submitting to the jury the count VI claim for breach of a guaranty by Berns to pay for Garcia's stock purchases in that the oral guaranty claim was barred by the Missouri Statute of Frauds, Mo.Ann. Stat. §§ 432.010 & .040 (Vernon 1952). Appellee Hutton cross-appeals primarily on the grounds that the trial court erred in failing to enter a judgment for $68,000 on the

count VI guaranty verdict against Berns despite the jury's verdict of $0 damages.

After a careful consideration of all of the issues raised on appeal, we affirm all judgments entered relating to appellants Garcia and Berns which have been challenged on appeal with the exception of the judgment against appellant Berns on the oral guaranty which is vacated with directions to dismiss.

*In Pari Delicto Defense*

Appellants' primary contention before this court is that the trial court erred in submitting an *in pari delicto* instruction which was a defense by Hutton against all of the appellant's common law fraud and Rule 10b–5 counterclaims.[5] According to the appellants, this instruction was erroneous not only because it improperly defined the defense, but because such a defense is not available in a case such as this where a broker allegedly misrepresents that he has inside information to his client. Although the applicability of the *in pari delicto* defense to securities law violations is a disputed issue [6] which this circuit has yet to pass

4. The Honorable William S. Bahn, United States Magistrate, United States District Court for the Eastern District of Missouri.

5. Instruction 49A, the *in pari delicto* defense instruction provided:

> An affirmative defense of plaintiff Hutton to the counterclaims of defendants Berns, Aul and Garcia is known as the doctrine of "in Pari Delicto."
>
> An affirmative defense of all of the defendants to the claim of plaintiff is also known as the doctrine of "in Pari Delicto."
>
> In order to establish the defense of "in Pari Delicto", the asserting party has the burden of proving by the preponderance of the evidence that any of the parties asserted or believed that they were acting on inside information concerning Victoria Stations.

6. For cases denying the defense, see *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 76 (2d Cir. 1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (*in pari delicto* not appropriate in section 10(b) securities fraud claim where plaintiff's alleged wrongdoings were insufficiently related to statutory violation or objectives under section 10(b)); *Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F.2d 1166, 1181 (8th Cir. 1972) (defense not available against knowledgeable and deceitful investors in action brought under section 7 of the Securities Exchange Act of

1934, 15 U.S.C. § 78g, against broker for violation of credit extension limits); *Pearlstein v. Scudder & German*, 429 F.2d 1136, 1141 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971) (*in pari delicto* does not apply in case where broker violated securities margin requirements); *Xaphes v. Shearson, Hayden, Stone, Inc.*, 508 F.Supp. 882, 886 (S.D.Fla.1981) (defense does not apply to a Rule 10b–5 claim where a noninsider broker misrepresents that he is insider to his customer because customer is not a "tippee" with a duty to disclose); *Moholt v. Dean Witter Reynolds, Inc.*, 478 F.Supp. 451, 453 (D.D.C.1979) (*in pari delicto* inapplicable to section 10(b) securities fraud claim where broker purports to furnish inside tips because broker could never be at equal fault with receptive customers); *Nathanson v. Weis, Voisin, Carmon, Inc.*, 325 F.Supp. 50 (defense not available in Rule 10b–5 claim by customer against broker insider who furnished false inside information).

For cases allowing the *in pari delicto* defense, see *Wolfson v. Baker*, 623 F.2d 1074, 1082 (5th Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981) (*in pari delicto* barred recovery by investor against broker under securities laws for failure of broker to advise investor that his holdings were substantial enough to require registration, and sales of the holdings would be illegal); *Tarasi v. Pittsburg*

upon in factual circumstances similar to this case, it is not a question which we need address at this time. This is because regardless of the correctness and applicability of an *in pari delicto* instruction the appellants cannot be viewed as having been prejudiced as a result of the jury having been given that instruction in the present case.

■ Under the "harmless error" rule any error by the trial court in a proceeding must be disregarded unless it affects the "substantial rights of the parties." Fed.R. Civ.P. 61; 28 U.S.C. § 2111 (1976). It is well settled that this rule applies to jury instructions as well as other alleged errors. *See Flanigan v. Burlington Northern, Inc.*, 632 F.2d 880, 889 (8th Cir. 1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981). One circumstance in which alleged errors have been held to be harmless is where in light of the instructions actually given and the jury's verdict it is clear that the jury did not actually reach the allegedly erroneous instruction in arriving at its verdict. *See, e.g., Lowe v. Taylor Steel Products Co.*, 373 F.2d 65, 68 (8th Cir.), *cert. denied*, 389 U.S. 858, 88 S.Ct. 85, 19 L.Ed.2d 122 (1967); *Warren v. Ward*, 371 F.2d 906, 908 (8th Cir. 1967); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 305 (5th Cir. 1978); *Eastburn v. Ford Motor Co.*, 471 F.2d 21, 22 (5th Cir. 1972). We believe that the present case presents such circumstances calling for the application of the harmless error rule.

Instruction 32A was given by the court as an affirmative defense to all of Hutton's claims against the appellants. It provided that:

> Your verdict must be for the defendants and against plaintiff E. F. Hutton on plaintiff's claim against the defendants *on all counts*, if you believe:

First, plaintiff E. F. Hutton, through its agents and employees, represented to defendants that it had inside information that Victoria Station was being acquired by or merged with another company, as a result of which the value of Victoria Station stock would increase and the defendants would make a substantial profit, intending that said defendants rely upon such representations in placing orders to purchase stock in Victoria Station, and

Second, the representation was false, and

Third, plaintiff E. F. Hutton did not know whether the representation was true or false, and

Fourth, the representation was material to the purchase by said defendants of Victoria Stations stock, and

Fifth, said defendants relied on the representation and [sic] making the purchases and in so relying, defendants were using ordinary care.

(Emphasis added.)

■ Implicit in the jury's verdicts in favor of Hutton against appellant Garcia on count II (failure to pay for the stock) and against appellant Berns on count VI (guaranty of Garcia's account) is the fact that the jury must have found that at least one of the five elements of the appellants' affirmative defense contained in Instruction 32A was not established. Because the same five elements present in the affirmative defense instruction were required to be established by the appellants' counterclaim instructions against Hutton for violation of Rule 10b–5 (see Instructions 36 & 37, 40 & 41) and common law fraud (see Instructions 34, 38), the jury could not have returned a verdict against Hutton on the appellants' counterclaims after it had returned a ver-

---

*Nat'l Bank*, 555 F.2d 1152, 1161 (3d Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977) (defense held to apply to Rule 10b–5 claim by investor who sued nonbroker tipper who provided false inside tip); *Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir. 1969) (*in pari delicto* applicable to Rule 10b–5 claim against corporate insider who furnished false tip to investor who purchased stock on open market), *accord James v. DuBreuil*, 500 F.2d

155, 160 (5th Cir. 1974) (rule in *Kuehnert* held to apply to tipper-tippee transaction not involving purchase or sale in the public market); *In Re Havens Industries, Inc.*, 462 F.Supp. 172, 178 (S.D.N.Y.1978) (purportedly applying law of the First Circuit, court held defense bars recovery under Rule 10b–5 in suit against brokers by investors who purchased securities from brokers on the basis of purportedly inside information that was false).

dict in favor of Hutton on any of its claims against the appellants.[7] Thus, the *in pari delicto* instruction, which was a defense to the appellants' counterclaims against Hutton, apparently was never reached or considered by the jury, and any error in the submission of that instruction did not affect the substantial rights of the appellants in the circumstances of this case.

*Oral Guaranty*

In count VI of its complaint Hutton alleged that appellant Berns orally guaranteed the account of appellant Garcia on October 17, 1979, for any future purchases of Victoria Station stock Garcia made. The only testimony concerning the alleged oral guaranty came from Hutton's account executive, O'Dell, who testified essentially that Berns had indicated that he and Garcia were in a partnership and that Berns had promised to pay for the stock if Garcia did not. Several days after this alleged guaranty Garcia purchased an additional $212,-000 worth of Victoria Station stock on the margin for which payment was not made when the settlement date arrived.

 Berns denied making the guaranty and also pleaded the Missouri Statute of Frauds[8] as an affirmative defense. Over appellant's objection based on the statute of frauds, the trial court submitted count VI to the jury which returned a verdict in favor of Hutton on the oral guaranty for $0 damages. Berns maintains that the trial court erred in submitting this count to the jury. Appellee Hutton primarily argues that where the credit is extended to a debtor contemporaneously with or after the oral guaranty, the creditor's full performance takes the promise out of the statute of frauds.

In resolving an issue as to whether or not an oral agreement or promise is within the statute of frauds, the basic inquiry is whether such agreement or promise is original or collateral. If original, it is enforceable; if collateral, it is not enforceable. *Carvitto v. Ryle*, 495 S.W.2d 109, 114(9) (Mo.App.1973); 37 C.J.S. Frauds, Statute of § 16, p. 522. And the agreement or promise is an original undertaking, and thus not within the statute of frauds, "[i]f the credit is given by the promisee to the promisor alone" and "the leading or main purpose of the promisor is to gain some advantage for himself, or to promote some interest or purpose of his own, rather than to become the mere guarantor or surety of another's debt, and the promise is made upon a consideration beneficial to the promisor." *Wahl v. Cunningham*, 320 Mo. 57, 70–71, 6 S.W.2d 576, 581(4), 67 A.L.R. 489 (banc 1928). Accord, *Carvitto v. Ryle*, supra, 495 S.W.2d at 114; *Diehr v. Carey*, 238 Mo.App. 889, 897, 191 S.W.2d 296, 300(1) (1945).

*Galemore Motor Co. v. State Farm Mutual Automobile Insurance Co.*, 513 S.W.2d 161, 166–67 (Mo.Ct.App.1974).

The applicability of this well established standard in Missouri to the circumstances presented by the alleged oral guaranty in the instant case would seem clear. Nevertheless, Hutton points to some rather confusing language in two Missouri cases as supporting its position that its full performance of the alleged contract removes the

---

7. The jury was essentially advised of this in Instruction 49 which provided that:

> If you find in favor of E. F. Hutton and Company, Inc., and against defendants Berns, Aul or Garcia, on any of the claims of plaintiff against said defendant, then you must also find against any said defendant and in favor of plaintiff on the counterclaim of any said defendant.
>
> Conversely, if you find in favor of defendant Berns, Aul or Garcia on any of the counterclaims of said defendants against plaintiff, then you must find against plaintiff E. F. Hutton and in favor of any said defendant, on the claim of the plaintiff.

8. Mo.Ann.Stat. § 432.010 (Vernon 1952) provides in relevant part:

> No action shall be brought * * * to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, * * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized * * *.

oral guaranty from the statute of frauds. In *Walker v. Whitten*, 38 S.W.2d 480 (Mo. Ct.App.1931) a lawyer sued an employer on an alleged promise by the employer to pay the attorney for services rendered to an employee in getting the employee released from jail so that the employee could continue working for the employer. In the course of the court's opinion rejecting the statute of frauds defense, the court stated in *dicta* that an additional reason that the statute did not apply was that a "promisor cannot stand by, receive the benefit of performance of an agreement made by him, and thereafter invoke the statute as a defense." *Id.* at 482. Similarly, in *Burk v. Walton*, 337 Mo. 781, 86 S.W.2d 92 (App.1935), another suit to recover on an alleged oral promise to pay the debt of another, the court stated that when a contract "has been fully and completely performed on one side, and the other party has had the benefit of such performance, it is thereby removed from the operation of the statute entirely * * *." *Id.* at 94.

We cannot accept Hutton's contention that these cases establish that the law of Missouri is that performance by the creditor after the alleged oral guaranty invariably removes the case from the statute of frauds. First, it must be noted that neither *Walker* nor *Burk* abandoned the well established original/collateral promise principle set forth in *Galemore Motor Co., supra.* In fact, a careful reading of both cases indicates that it was the fact that the promisor's alleged guaranty was found to be "original" that determined the outcome of the cases. Thus, in *Walker v. Whitten, supra,* the court first applied the original/collateral promise test, and determined that the promisor made the promise to further his own beneficial interests in obtaining the debtor-employee's services. The court concluded that the agreement was a "direct and original undertaking on the part of Whitten supported by a sufficient consideration." 38 S.W.2d at 482. Similarly, in *Burk v. Walton, supra,* the court empha-

sized the fact that the promisor had a beneficial interest in the transaction to which his oral promise to pay the debt of another related, and that the promise "to pay became an independent and original promise founded upon said consideration moving directly to [the promisor] constituting the motive and inducement for his promise." 86 S.W.2d at 95.

Moreover, it must be noted that even under the language in *Walker* and *Burk* concerning the effect of full performance on the statute of frauds in relation to the promise to pay a debt of another, full performance by the creditor, in and of itself, does not vitiate the statute of frauds bar. These decisions make it clear that the performance rendered by the creditor must be beneficial to the promisor, not just to the debtor. Thus, in *Walker v. Whitten, supra,* the court stated: "The *promisor* cannot stand by, *receive the benefit of performance* of an agreement made by him, and thereafter invoke the statute as a defense." *Id.* at 482 (emphasis added). Likewise, in *Burk v. Walton* the court stated that the agreement must be "fully and completely performed on one side, and the *other party* has had the *benefit* of such performance" before the doctrine of performance applies. 86 S.W.2d at 94 (emphasis added). Consequently, the court went on to analyze the sufficiency of the consideration or benefit flowing to the *promisor* as a result of his promise to pay the debt of another. *See id.* at 94–95.

■ Our review of Missouri case law in this area leads us to conclude that the original/collateral promise distinction is still the primary standard in determining whether an oral promise is outside the statute of frauds, regardless of the fact that the alleged oral promise is made contemporaneously with or before credit is actually given.[9] Furthermore, it would appear that if full performance by the creditor does remove the statutory bar it is only in cases

9. *See, e.g., Galemore Motor Co. v. State Farm Mutual Automobile Insurance Co.*, 513 S.W.2d 161 (Mo.Ct.App.1974); *Carvitto v. Ryle*, 495 S.W.2d 109 (Mo.Ct.App.1973); *Diehr v. Carey*, 191 S.W.2d 296 (Mo.Ct.App.1945); *Swarens v. Pfnisel*, 26 S.W.2d 951 (Mo.1930).

where an original promise and independent beneficial consideration flowing to the promisor is found.

■ In the instant case we have thoroughly canvassed the record for evidence relating to whether the promise was an original one, i.e., whether credit was given by the promisee to the promisor alone and the leading or main object of the promise was to serve an interest of or directly benefit the promisor, see *Carvitto v. Ryle*, 495 S.W.2d 109, 114 (Mo.Ct.App.1973), and whether the promise was supported by "consideration beneficial to the promisor." See, *e.g.*, *Galemore Motor Co. v. State Farm Automobile Insurance Co.*, *supra*, 513 S.W.2d at 167; *Burk v. Walton, supra*, 86 S.W.2d at 94. Without erring on the side of understatement, it must be said that the evidence in the record on this issue is slender. The plaintiff-appellee in this case had the burden of proving the existence and terms of an alleged oral contract. This burden presumably extends to evidence related to the exact nature of the promise and consideration underlying that promise which would take this alleged oral guaranty out of the statute of frauds. In light of the paucity of evidence in the record relating to these issues, we must conclude that the appellee failed to meet this burden and that the trial court erred in submitting to the jury count VI relating to the alleged oral guaranty by appellant Berns.

*Conclusion*

We have carefully reviewed appellants' other contentions on appeal and believe them to be without merit. Furthermore, in light of our conclusions on the foregoing issues on appeal, we need not address issues raised by appellee Hutton on its cross-appeal.[10] Therefore, we affirm the judgments entered by the district court with respect to all claims and counterclaims involving appellants Berns and Garcia which have been appealed in this case, except the judgment on count VI on the alleged oral guaranty. The judgment on count VI against appellant Berns is vacated with directions to the district court to dismiss.

LAY, Chief Judge, concurring.

I concur in the result only of the foregoing opinion.

---

10. Hutton's argument on appeal that the trial court erred in failing to enter a judgment for $68,000 in place of the jury's verdict of $0 damages on the count VI oral guaranty is necessarily disposed of by our conclusion that count VI was barred by the statute of frauds.

Furthermore, in its brief Hutton explicitly states that it is not asserting any other grounds for error unless this court grants a new trial on the Berns and Garcia appeal. See Brief of Appellee-Cross Appellant at 43.